## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**     **2. PLEASE TYPE OR PRINT**     **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Aubrey Drake Graham v. UMG Recordings, Inc. | S.D.N.Y. | Hon. Jeannette A. Vargas |

| | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
|---|---|---|
| | October 9, 2025 | 1:25-cv-00399-JAV |

| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
|---|---|---|
| | October 29, 2025 | ☐ Yes   ☑ No |

| **Attorney(s) for Appellant(s):** | Counsel's Name:   Address:   Telephone No.:   Fax No.:   E-mail: |
|---|---|
| ☑ Plaintiff<br>☐ Defendant | Michael J. Gottlieb, Willkie Farr & Gallagher LLP, 229 Century Park East, Los Angeles, CA 90067; (310) 855-3111 (Tel.); (310) 855-3099 (Fax); mgottlieb@willkie.com |

| **Attorney(s) for Appellee(s):** | Counsel's Name:   Address:   Telephone No.:   Fax No.:   E-mail: |
|---|---|
| ☐ Plaintiff<br>☑ Defendant | Rollin A. Ransom, Sidley Austin LLP, 350 South Grand Avenue, Los Angeles, CA 90071; (213) 896-6000 (Tel.); (213) 896-6600 (Fax); rransom@sidley.com |

| Has Transcript Been Prepared?<br><br>Yes | Approx. Number of Transcript Pages:<br><br>53 | Number of Exhibits Appended to Transcript:<br><br>0 | Has this matter been before this Circuit previously? ☐ Yes ☑ No<br><br>If Yes, provide the following:<br><br>Case Name:  N/A<br><br>2d Cir. Docket No.:  N/A          Reporter Citation: (i.e., F.3d or Fed. App.)  N/A |
|---|---|---|---|

***ADDENDUM "A":*** COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

***ADDENDUM "B":*** COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party          ☑ Diversity<br>☐ Federal question (U.S. not a party)    ☐ Other (specify): _____ | ☑ Final Decision          ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b))<br>☐ Interlocutory Decision Appealable As of Right    ☐ Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

FORM C (Rev. October 2025)

## PART B: DISTRICT COURT DISPOSITION (Check as many as apply)

**1. Stage of Proceedings**

- [✓] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**

- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [✓] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal

- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [ ] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**

- [✓] Damages:
  - [✓] Sought: $ TBD
  - [ ] Granted: $ _____
  - [✓] Denied: $ TBD
- [✓] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [✓] Denied

## PART C: NATURE OF SUIT (Check as many as apply)

**1. Federal Statutes**

- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [ ] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____

- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright □ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental

- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**

- [ ] Admiralty/ Maritime
- [✓] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**

- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**

- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**

- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**

- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**

- [✓] Yes
- [ ] No

Will appeal raise a matter of first impression?

- [ ] Yes
- [✓] No

---

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____ [✓] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A) Arises from substantially the same case or controversy as this appeal? [ ] Yes [✓] No

   (B) Involves an issue that is substantially similar or related to an issue in this appeal? [ ] Yes [✓] No

If yes, state whether □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

Name of Appellant: N/A

| Date: 11/12/2025 | Signature of Counsel of Record: /s/ Michael J. Gottlieb |
|---|---|

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the $605 docketing fee to the United States District Court or the $600 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. October 2025)

## ADDENDUM A

### 1. The Nature of the Action

This action arises from Defendant UMG Recordings, Inc.'s ("UMG") publication and promotion of "Not Like Us" (the "Recording") by Kendrick Lamar Duckworth, a musical work that conveys unambiguous and false factual allegations that Plaintiff Aubrey Drake Graham ("Drake") is a criminal pedophile. UMG, the music label that represents both Drake and Mr. Duckworth, published the Recording on May 4, 2024. The Recording explicitly accuses Drake of being a "certified pedophile" and "predator" and calls for violence against him. In addition, the Recording states that the allegations against Drake are based on yet-undisclosed information: "Say, Drake, I hear you like 'em young," and "Rabbit hole is still deep, I can go further, I promise." Upon release, the Recording was accompanied by an album cover depicting an aerial view of Drake's home in Toronto, Canada, plastered with icons used by law enforcement and public-safety applications to denote residences of registered sex offenders (the "Image"). A few months later, UMG published a music video for the Recording, which shows images associated with sex trafficking that reinforce the accusation that Drake is a criminal pedophile who should be incarcerated (the "Video").

At all times, UMG knew that the Recording's allegations that Drake is a criminal pedophile are false. Yet, UMG was motivated to publish and promote these heinous and false allegations against Drake—even after they led to violent attacks on Drake's home and threats against his family, and after Drake informed UMG of the harm they were causing—because, by doing so, UMG stood to greatly profit. Mr. Duckworth was signed to UMG on a short-term exclusive contract, so UMG wanted to expeditiously prove its worth to Mr. Duckworth to convince him to re-sign exclusively with UMG long-term. Simultaneously, Drake's contract was nearing fulfilment, and re-signing him would come at a high cost to UMG, so UMG was incentivized to

devalue his music and brand to gain leverage in negotiations for an extension. Therefore, UMG launched a campaign to promote and spread the Recording, Image, and Video (collectively, the "Defamatory Material") to the widest extent possible, including through deceptive business practices such as radio payola and artificial streaming.

On January 15, 2025, Drake filed a Complaint against UMG, alleging claims for defamation/defamation *per se*, harassment in the second degree, and violations of New York General Business Law § 349. On April 16, 2025, Drake filed his Amended Complaint against UMG alleging the same violations by UMG.

### 2. The Result Below

On October 9, 2025, the District Court issued an Order granting UMG's Motion to Dismiss Drake's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Addendum A(4); ECF No. 96 (the "Order").

*First*, the District Court concluded that the Amended Complaint failed to state a claim for defamation because the allegedly defamatory statements in the Recording constitute nonactionable opinion, and, further, those statements do not constitute actionable mixed opinion based on undisclosed facts. Order at 2, 26–29. In reaching these conclusions, the District Court, upon UMG's request and over Drake's objections, took judicial notice of numerous extrinsic exhibits and other evidence outside the scope of the pleadings.[1] *Id*. at 3–4, 21, 28 n.5. To reach these legal conclusions, the District Court first resolved disputed factual questions: what is the proper context in which to evaluate the Defamatory Material, and does that context differ for the initial publication and later republications of the Defamatory Material.

---

[1] During oral argument, Drake did not oppose the District Court's consideration of exhibits B, J, and P to UMG's Request for Judicial Notice, which are referenced in the Amended Complaint. *See id*. at 4 n.1.

2

Despite well-pleaded allegations in the Amended Complaint to the contrary, the District Court held that the context is the rap battle between Drake and Mr. Duckworth. The District Court did not address the nuances related to the publication and republications of the Defamatory Material. In determining the overall context, the District Court held that the: (1) forum in which the allegedly defamatory statements appeared was a music recording, or "diss track," *id*. at 14–15; (2) surrounding circumstances of the statements were the months-long "rap battle," which included songs that were "in dialogue with one another," *id*. at 15–22; and (3) tone and language of the Recording suggested that the statements were mere opinion rather than verifiable fact, *id*. at 23–25.

Based on this context, the District Court then held that the Recording could not reasonably be understood to convey, as a factual matter, that Drake is a pedophile or that he has engaged in sexual relations with minors. *Id*. at 11–26. In so holding, the District Court discredited the Amended Complaint's allegations that actual listeners, commentators in the rap industry, and the press did understand the Recording as "convey[ing] a precise factual message (pedophilia) about Drake" and instead reached its own conclusion that those subjective interpretations were not reasonable under the circumstances. *Id*. at 24–25. The District Court further determined that the Image and Video constituted opinion as "reinforce[ment] [of] the message of the Recording" that "c[ould not] reasonably be understood to convey a factual message." *Id*. at 25–26.

The District Court also held, based on the context of the rap battle, judicially noticed lyrics of other songs, and public reporting, that "no reasonable person would listen to 'Not Like Us' and assume that Lamar uniquely had access to credible, provable facts that revealed Drake to be a pedophile," and that the Recording therefore could not be characterized as actionable mixed opinion. *Id*. at 26–29. Again, rather than accepting as true the Amended Complaint's allegations

3

that the Recording's lyric "Rabbit hole is still deep, I can go further, I promise" implies that the allegations against Drake are based on undisclosed information, and that actual listeners reasonably understood the lyric in precisely that way, the Court held that "[i]t is not at all clear that this is a natural reading of this lyric," and that "no reasonable listener could understand it in this way[.]" *Id*. at 28–29.

*Second*, the District Court held that the Amended Complaint failed to state a claim for Second Degree Harassment on the basis that New York Penal Code § 240.26 does not expressly confer a private right of action. *Id*. at 29–33. Because § 240.26 is a criminal statute contained within the Penal Law, the District Court held that implying a private right of action would not be consistent with the legislative scheme. *See id*.

*Third*, the District Court held that the Amended Complaint failed to state a claim that UMG engaged in deceptive business practices prohibited by New York General Business Law § 349. *Id*. at 33–38. Here, while acknowledging that facts relating to UMG's covert and deceptive practices may be peculiarly within the possession and control of UMG, the District Court found the Amended Complaint's "reliance on online comments and reporting insufficient to meet the plausibility standard" of pleading. *Id*. at 35–36. Rather than accepting as true the well-pleaded allegations in the Amended Complaint, the District Court weighed and discredited them, holding that they "boil[ed] down to unreliable online commentary." *Id.* at 36. The District Court also held that the Amended Complaint did not sufficiently allege that UMG's deceptive practices were consumer-oriented and harmed consumers or the public interest. *Id*. at 36–38.

3. **Copies of the Notice of Appeal and Current District Court Docket Sheet**

   Copies are annexed hereto.

4. **Copies of the Relevant Opinions/Orders Forming the Basis for this Appeal**

   Copies are annexed hereto.

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| AUBREY DRAKE GRAHAM,<br><br>Plaintiff,<br><br>v.<br><br>UMG RECORDINGS, INC.<br><br>Defendant. | No. 1:25-cv-399-JAV |

## NOTICE OF APPEAL

Plaintiff Aubrey Drake Graham hereby appeals from the District Court's Opinion and Order entered on October 9, 2025 (ECF No. 96) in the above-captioned case to the United States Court of Appeals for the Second Circuit.

Dated: October 29, 2025

Respectfully submitted,

By: */s/ Michael J. Gottlieb*
Michael J. Gottlieb
Anna Gotfryd (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, D.C. 20006
Tel: (202) 303-1000
mgottlieb@willkie.com
agotfryd@willkie.com

Brady M. Sullivan
M. Annie Houghton-Larsen
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019

1

Tel: (212) 728-8000
bsullivan@willkie.com
mhoughton-larsen@willkie.com

*Counsel for Plaintiff Aubrey Drake Graham*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 29, 2025, I electronically filed the foregoing NOTICE OF APPEAL with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

Dated: October 29, 2025

By: */s/ Michael J. Gottlieb*
Michael J. Gottlieb
WILLKIE FARR & GALLAGHER LLP

*Counsel for Plaintiff Aubrey Drake Graham*

# Exhibit B

CLOSED,APPEAL,ECF

## U.S. District Court
### Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:25-cv-00399-JAV

Graham v. UMG Recordings, Inc.
Assigned to: Judge Jeannette A. Vargas
Demand: $75,000
Cause: 28:1332 Diversity Action

Date Filed: 01/15/2025
Date Terminated: 10/09/2025
Jury Demand: Plaintiff
Nature of Suit: 320 Assault Libel & Slander
Jurisdiction: Diversity

**Plaintiff**

**Aubrey Drake Graham**

represented by **Anna Mary Gotfryd**
Willkie Farr & Gallagher LLP
1875 K. Street, N.W.
Washington, DC 20006-1238
202-303-1228
Email: agotfryd@willkie.com
*ATTORNEY TO BE NOTICED*

**Brady M. Sullivan**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
212-728-8949
Email: bsullivan@willkie.com
*ATTORNEY TO BE NOTICED*

**Marie Anne Houghton-Larsen**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
212-728-8164
Email: mhoughton-larsen@willkie.com
*ATTORNEY TO BE NOTICED*

**Meryl Conant Governski**
Dunn Isaacson Rhee LLP
401 Ninth Street, N.W.
Suite 800
20004
Washington, DC 20004
202-240-2900
Email: MGovernski@dirllp.com
*TERMINATED: 07/02/2025*
*ATTORNEY TO BE NOTICED*

**Michael Gottlieb**

Willkie Farr & Gallagher LLP
Willkie Farr & Gallagher LLP
2029 Century Park East
90067
Los Angeles, CA 20015
202-303-1442
Fax: 202-303-2442
Email: mgottlieb@willkie.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UMG Recordings, Inc.**                    represented by    **Nicholas Primer Crowell**
Sidley Austin LLP (NY)
787 Seventh Avenue
New York, NY 10019
(212)-839-5449
Fax: (212)-839-5599
Email: ncrowell@sidley.com
*ATTORNEY TO BE NOTICED*

**Rollin A. Ransom**
Sidley Austin LLP
350 South Grand Avenue
Los Angeles, CA 90071
213-896-6000
Email: rransom@sidley.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Charis Kubrin**                           represented by    **Jack Lerner**
UCI Law Clinic
UC Irvine School of Law
401 E. PELTASON DR.
Irvine, CA 92697
949-824-7684
Email: jlerner@law.uci.edu
*ATTORNEY TO BE NOTICED*

**Amicus**

**Jack Lerner**                             represented by    **Jack Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Adam Dunbar**                             represented by    **Jack Lerner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Kyle Winnen**                             represented by    **Jack Lerner**
(See above for address)

11/3/25, 9:57 PM
SDNY CM/ECF NextGen Version 1.8.4

*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/15/2025 | 1 | COMPLAINT against UMG Recordings, Inc.. (Filing Fee $ 405.00, Receipt Number ANYSDC-30461182)Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit A - Lyrics, # 2 Exhibit B - Most-Viewed TikTok Videos).(Gottlieb, Michael) (Entered: 01/15/2025) |
| 01/15/2025 | 2 | CIVIL COVER SHEET filed..(Gottlieb, Michael) (Entered: 01/15/2025) |
| 01/15/2025 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to UMG Recordings, Inc., re: 1 Complaint. Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 01/15/2025) |
| 01/16/2025 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Jeannette A. Vargas. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(pc) (Entered: 01/16/2025) |
| 01/16/2025 | | Magistrate Judge Sarah Netburn is designated to handle matters that may be referred in this case. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (pc) (Entered: 01/16/2025) |
| 01/16/2025 | | Case Designated ECF. (pc) (Entered: 01/16/2025) |
| 01/16/2025 | | ***NOTICE TO ATTORNEY REGARDING CIVIL. CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Michael Gottlieb. The following case opening statistical information was erroneously selected/entered: County code New York;. The following correction(s) have been made to your case entry: the County code has been modified to XX Out of State;. (pc) (Entered: 01/16/2025) |
| 01/16/2025 | 4 | ELECTRONIC SUMMONS ISSUED as to UMG Recordings, Inc...(pc) (Entered: 01/16/2025) |
| 01/21/2025 | 5 | NOTICE OF APPEARANCE by Nicholas Primer Crowell on behalf of UMG Recordings, Inc...(Crowell, Nicholas) (Entered: 01/21/2025) |
| 01/21/2025 | 6 | LETTER MOTION for Extension of Time *to Respond to the Complaint* addressed to Judge Jeannette A. Vargas from Nicholas P. Crowell dated January 21, 2025. Document filed by UMG Recordings, Inc...(Crowell, Nicholas) (Entered: 01/21/2025) |
| 01/22/2025 | 7 | AFFIDAVIT OF SERVICE of Summons and Complaint. UMG Recordings, Inc. served on 1/21/2025, answer due 2/11/2025. Service was accepted by Carlos Bobe, Intake Specialist, CT Corporation System. Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 01/22/2025) |
| 01/22/2025 | 8 | NOTICE OF INITIAL PRETRIAL CONFERENCE: Initial Conference set for 4/2/2025 at 12:00 PM in Courtroom 14C, 500 Pearl Street, New York, NY 10007 before Judge Jeannette A. Vargas. SO ORDERED. (Signed by Judge Jeannette A. Vargas on 1/22/2025) (jca) (Entered: 01/22/2025) |

| 01/22/2025 | 9 | ORDER granting 6 Letter Motion for Extension of Time. Defendant's request for an extension of time to respond to the Complaint is GRANTED. Defendant shall respond to the Complaint by March 17, 2025. The Clerk of the Court is DIRECTED to terminate ECF No. 6. (Signed by Judge Jeannette A. Vargas on 1/22/2025) (rro) (Entered: 01/23/2025) |
|---|---|---|
| 01/22/2025 | | Set/Reset Deadlines: UMG Recordings, Inc. answer due 3/17/2025. (rro) (Entered: 01/23/2025) |
| 01/23/2025 | 10 | LETTER addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated 1/23/2025 re: Case Schedule. Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 01/23/2025) |
| 01/24/2025 | 11 | MOTION for Meryl C. Governski to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-30512707. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Aubrey Drake Graham. (Attachments: # 1 Affidavit in Support by Meryl C. Governski, # 2 Exhibit A - DC Certificate of Good Standing, # 3 Exhibit B - Maryland Certificate of Good Standing, # 4 Proposed Order for Admission Pro Hac Vice).(Governski, Meryl) (Entered: 01/24/2025) |
| 01/24/2025 | 12 | NOTICE OF APPEARANCE by Marie Annie Houghton-Larsen on behalf of Aubrey Drake Graham..(Houghton-Larsen, Marie) (Entered: 01/24/2025) |
| 01/24/2025 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 11 MOTION for Meryl C. Governski to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-30512707. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bc)** (Entered: 01/24/2025) |
| 01/24/2025 | 13 | ORDER GRANTING ADMISSION TO PRACTICE, PRO HAC VICE granting 11 MOTION for Meryl C. Governski to Appear Pro Hac Vice ORDERED, that Meryl C. Governski, Esq. is admitted to practice, pro hac vice, in the above-captioned case to represent Aubrey Drake Graham in the United States District Court for the Southern District of New York, provided that the filing fee has been paid. (Signed by Judge Jeannette A. Vargas on 1/24/2025) (jca) (Entered: 01/24/2025) |
| 01/30/2025 | 14 | MOTION for Rollin A. Ransom to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-30541119. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by UMG Recordings, Inc...(Ransom, Rollin) (Entered: 01/30/2025) |
| 01/30/2025 | 15 | ORDER. GRANTED. Plaintiff's time to file their opposition to the motion to dismiss is extended to April 16, 2025 and the Defendant's time to file a reply in support of its motion to dismiss is extended to April 30, 2025. (HEREBY ORDERED by Judge Jeannette A. Vargas) (Text Only Order) (Yin-Olowu, Tammy) (Entered: 01/30/2025) |
| 01/30/2025 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 14 MOTION for Rollin A. Ransom to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-30541119. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (rju)** (Entered: 01/30/2025) |

| 01/30/2025 | 16 | ORDER GRANTING MOTION FOR ADMISSION PRO HAC VICE granting 14 Motion for Rollin A. Ransom to Appear Pro Hac Vice. IT IS HEREBY ORDERED that Applicant is admitted to practice Pro Hac Vice in the above entitled action in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys. (Signed by Judge Jeannette A. Vargas on 1/30/2025) (sgz) (Entered: 01/30/2025) |
|---|---|---|
| 02/07/2025 | 17 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Universal Music Group, N.V., Corporate Parent Bollere SE for UMG Recordings, Inc.. Document filed by UMG Recordings, Inc...(Crowell, Nicholas) (Entered: 02/07/2025) |
| 02/21/2025 | 18 | LETTER MOTION to Adjourn Conference addressed to Judge Jeannette A. Vargas from Rollin A. Ransom dated February 21, 2025. Document filed by UMG Recordings, Inc... (Ransom, Rollin) (Entered: 02/21/2025) |
| 02/24/2025 | 19 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated 2/24/2025 re: 18 LETTER MOTION to Adjourn Conference addressed to Judge Jeannette A. Vargas from Rollin A. Ransom dated February 21, 2025. . Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 02/24/2025) |
| 02/24/2025 | 20 | DECLARATION of M. Annie Houghton-Larsen in Support re: 19 Response in Opposition to Motion,. Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit 1 - Correspondence Between Counsel for Plaintiff and Counsel for Defendant Regarding Holding a Rule 26(f) Conference, # 2 Exhibit 2 - Correspondence Between Counsel for Plaintiff and Counsel for Defendant Regarding Extending the Parties' Briefing Schedule). (Gottlieb, Michael) (Entered: 02/24/2025) |
| 03/04/2025 | 21 | ORDER denying 18 Letter Motion to Adjourn Conference. Defendant's request to adjourn the initial pretrial conference scheduled for April 2, 2025, is DENIED. It is not the practice of this Court to routinely stay discovery pending the outcome of a motion to dismiss. See Guiffre v. Maxwell, 2016 WL 254932, at *1 (S.D.N.Y. Jan. 20, 2016). The Clerk of Court is respectfully directed to terminate ECF No. 18. SO ORDERED. (Signed by Judge Jeannette A. Vargas on 3/4/25) (yv) (Entered: 03/04/2025) |
| 03/14/2025 | 22 | NOTICE OF APPEARANCE by Brady M. Sullivan on behalf of Aubrey Drake Graham.. (Sullivan, Brady) (Entered: 03/14/2025) |
| 03/17/2025 | 23 | MOTION to Dismiss . Document filed by UMG Recordings, Inc...(Ransom, Rollin) (Entered: 03/17/2025) |
| 03/17/2025 | 24 | MEMORANDUM OF LAW in Support re: 23 MOTION to Dismiss . . Document filed by UMG Recordings, Inc...(Ransom, Rollin) (Entered: 03/17/2025) |
| 03/17/2025 | 25 | NOTICE of /Request for Judicial Notice in Support of Defendant UMG Recordings, Inc.'s Motion to Dismiss the Complaint re: 23 MOTION to Dismiss .. Document filed by UMG Recordings, Inc.. (Attachments: # 1 Exhibit A - Protect Black Art Petition, # 2 Exhibit B - Back to Back, # 3 Exhibit C - Duppy Freestyle, # 4 Exhibit D - First Person Shooter, # 5 Exhibit E - Like That, # 6 Exhibit F - Push Ups, # 7 Exhibit G - Taylor Made Freestyle, # 8 Exhibit H - Euphoria, # 9 Exhibit I - 616 in LA, # 10 Exhibit J - Family Matters, # 11 Exhibit K - Meet the Grahams, # 12 Exhibit L - The Heart Part 6, # 13 Exhibit M - Grammys List, # 14 Exhibit N - USA Today, # 15 Exhibit O - Fox News, # 16 Exhibit P - The Guardian, # 17 Exhibit Q - New York Post, # 18 Exhibit R - People, # 19 Exhibit S - Complex, # 20 Exhibit T - NPR, # 21 Exhibit U - Toronto Sun, # 22 Exhibit V - GQ, # 23 Exhibit W - The New Yorker, # 24 Exhibit X - The New York Times, # 25 Exhibit Y - |

| | | |
|---|---|---|
| | | Affirmation of D. Kaefer, # 26 Exhibit Z - Mob Ties).(Ransom, Rollin) (Entered: 03/17/2025) |
| 03/17/2025 | 26 | DECLARATION of Rollin A. Ransom in Support re: 23 MOTION to Dismiss .. Document filed by UMG Recordings, Inc.. (Attachments: # 1 Exhibit 1 - Email dated 2/19/25). (Ransom, Rollin) (Entered: 03/17/2025) |
| 03/18/2025 | 27 | LETTER MOTION to Stay *Discovery* addressed to Judge Jeannette A. Vargas from Rollin A. Ransom dated March 18, 2025. Document filed by UMG Recordings, Inc.. (Attachments: # 1 Exhibit A - Drake's First Set of Requests for Production).(Ransom, Rollin) (Entered: 03/18/2025) |
| 03/19/2025 | 28 | ORDER: Accordingly, it is hereby ORDERED that, pursuant to Rule 5.I of this Court's Individual Rules and Practices in Civil Cases, by March 27, 2025, Plaintiff must notify the Court whether it intends to file an amended pleading or rely on the pleading being attacked. If Plaintiff elects to amend the complaint, Plaintiff shall file any amended complaint by April 16, 2025. Pursuant to Local Civil Rule 15.1, available at https://www.nysd.uscourts.gov/rules, any amended complaint should be filed with a redline showing all differences between the original and revised filings. Plaintiff is on notice that there will not be any further opportunity to amend the complaint to address issues raised by the motion to dismiss. If Plaintiff elects not to amend the pleadings, Plaintiff shall file any opposition to the motion to dismiss by April 16, 2025. Defendant's reply, if any, shall be filed by April 30, 2025. SO ORDERED. (Amended Pleadings due by 4/16/2025., Replies due by 4/30/2025., Responses due by 4/16/2025) (Signed by Judge Jeannette A. Vargas on 3/19/2025) (sgz) (Entered: 03/19/2025) |
| 03/20/2025 | 29 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated March 20, 2025 re: 27 LETTER MOTION to Stay *Discovery* addressed to Judge Jeannette A. Vargas from Rollin A. Ransom dated March 18, 2025. . Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 03/20/2025) |
| 03/26/2025 | 30 | JOINT LETTER addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated 3/26/2025 re: Proposed Civil Management Plan and Scheduling Order in Accordance with January 22, 2025 Court Order 8 . Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit 1 - Proposed Civil Case Management Plan and Scheduling Order).(Gottlieb, Michael) (Entered: 03/26/2025) |
| 03/26/2025 | 31 | LETTER addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated 3/26/2025 re: Notice of Amendment of Complaint in Response to March 19, 2025 Court Order 28 . Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 03/26/2025) |
| 03/28/2025 | | NOTICE OF HEARING: Initial Conference set for 4/2/2025 at 12:00 PM in Courtroom 14C, 500 Pearl Street, New York, NY 10007 before Judge Jeannette A. Vargas.(nmo) (Entered: 03/28/2025) |
| 04/02/2025 | | Minute Entry for proceedings held before Judge Jeannette A. Vargas: Initial Pretrial Conference held on 4/2/2025. Present were Michael Gottlieb, Anne Houghton-Larsen and Brady Sullivan for the plaintiff, and Rollin Ransom and Nicholas Crowell for the defendant. (Court Reporter Nicole DiMasi) (nmo) (Entered: 04/02/2025) |
| 04/02/2025 | 32 | ORDER denying 27 Letter Motion to Stay. As stated on the record during the conference held earlier today: Defendant's Motion to Stay Discovery Pending Resolution of Defendant's Motion to Dismiss is DENIED. The parties are directed to submit a proposed case management plan or file a joint letter if the parties are unable to agree on a discovery schedule by April 9, 2025. Oral argument on the Motion to Dismiss will be held on June 30, 2025, at 2:00 P.M. in Courtroom 14C, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. The Clerk of Court is directed |

| | | |
|---|---|---|
| | | to terminate ECF No. 27. SO ORDERED. (Signed by Judge Jeannette A. Vargas on 4/2/2025) (jjc) (Entered: 04/02/2025) |
| 04/02/2025 | | Set/Reset Hearings: Oral Argument set for 6/30/2025 at 02:00 PM in Courtroom 14C, 500 Pearl Street, New York, NY 10007 before Judge Jeannette A. Vargas. (jjc) (Entered: 04/02/2025) |
| 04/06/2025 | 33 | MOTION OF JOSEPH ANTHONY REYNA FOR LEAVE TO FILE BRIEF AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY. (Attachments: # 1 Exhibit motion for leave attachment) (jjc) (Entered: 04/08/2025) |
| 04/09/2025 | 34 | PROPOSED CASE MANAGEMENT PLAN. Document filed by Aubrey Drake Graham.. (Gottlieb, Michael) (Entered: 04/09/2025) |
| 04/10/2025 | 35 | LETTER MOTION for Extension of Time / *Extension of the Motion to Dismiss Briefing Schedule* addressed to Judge Jeannette A. Vargas from Rollin A. Ransom dated April 10, 2025. Document filed by UMG Recordings, Inc...(Ransom, Rollin) (Entered: 04/10/2025) |
| 04/11/2025 | 36 | TRANSCRIPT of Proceedings re: CONFERENCE held on 4/2/2025 before Judge Jeannette A. Vargas. Court Reporter/Transcriber: Nicole DIMasi, (212) 805-0320. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/2/2025. Redacted Transcript Deadline set for 5/12/2025. Release of Transcript Restriction set for 7/10/2025.. (McGuirk, Kelly) (Entered: 04/11/2025) |
| 04/11/2025 | 37 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 4/2/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 04/11/2025) |
| 04/14/2025 | 38 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial 28 U.S.C. 636(c). Any motions for leave to amend or join additional parties is due by May 2, 2025. Fact discovery is due by February 13, 2026. Requests to admit are due by December 30, 2025. Depositions are due by February 13, 2026. Expert discovery is due by May 29, 2026. This case is to be tried to a jury. Best present estimate of length of trial is three weeks. SO ORDERED. Motions due by 5/2/2025. Deposition due by 2/13/2026. Fact Discovery due by 2/13/2026. Expert Discovery due by 5/29/2026. (Signed by Judge Jeannette A. Vargas on 4/14/2025) (jjc) (Entered: 04/14/2025) |
| 04/14/2025 | 39 | ORDER denying 33 Letter Motion to File Amicus Brief. The Court does not find that the proposed amicus submission would aid the Court in its consideration of this matter. Accordingly, leave to file an amicus brief is DENIED. (HEREBY ORDERED by Judge Jeannette A. Vargas)(Text Only Order) (Yin-Olowu, Tammy) (Entered: 04/14/2025) |
| 04/14/2025 | 40 | ORDER granting 35 Letter Motion for Extension of Time. Defendant's motion to dismiss will remain due 21 days after the filing of the amended complaint, on May 7, 2025. The deadline for Plaintiff's opposition is hereby EXTENDED, to May 28, 2025. The deadline for Defendant's reply is hereby EXTENDED, to June 11, 2025. (HEREBY ORDERED by Judge Jeannette A. Vargas)(Text Only Order) (Yin-Olowu, Tammy) (Entered: 04/14/2025) |
| 04/16/2025 | 41 | AMENDED COMPLAINT amending 1 Complaint against UMG Recordings, Inc. with JURY DEMAND.Document filed by Aubrey Drake Graham. Related document: 1 |

| | | |
|---|---|---|
| | | Complaint. (Attachments: # 1 Exhibit 1 - Amended Complaint (Redline), # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit B (Redline)).(Gottlieb, Michael) (Entered: 04/16/2025) |
| 05/07/2025 | 42 | MOTION to Dismiss *the Amended Complaint*. Document filed by UMG Recordings, Inc... (Ransom, Rollin) (Entered: 05/07/2025) |
| 05/07/2025 | 43 | MEMORANDUM OF LAW in Support re: 42 MOTION to Dismiss *the Amended Complaint*. . Document filed by UMG Recordings, Inc...(Ransom, Rollin) (Entered: 05/07/2025) |
| 05/07/2025 | 44 | NOTICE of / Request for Judicial Notice in Support re: 42 MOTION to Dismiss the Amended Complaint. Document filed by UMG Recordings, Inc.. (Attachments: # 1 Exhibit A - Protect Black Art Petition, # 2 Exhibit B - NPR Drake-Kendrick Beef, # 3 Exhibit C - The New York Times Search, # 4 Exhibit D - Back to Back, # 5 Exhibit E - Duppy Freestyle, # 6 Exhibit F - First Person Shooter, # 7 Exhibit G - Like That, # 8 Exhibit H - Push Ups, # 9 Exhibit I - Taylor Made Freestyle, # 10 Exhibit J - Hot New Hip Hop Article, # 11 Exhibit K - Euphoria, # 12 Exhibit L - 616 in LA, # 13 Exhibit M - Family Matters, # 14 Exhibit N - Meet the Grahams, # 15 Exhibit O - The Heart Part 6, # 16 Exhibit P - NPR Drake & Kendrick Beefing, # 17 Exhibit Q - Rapaport Appeal Brief). (Ransom, Rollin) (Entered: 05/07/2025) |
| 05/08/2025 | 45 | ORDER denying as moot 23 Motion to Dismiss. (HEREBY ORDERED by Judge Jeannette A. Vargas)(Text Only Order) (Yin-Olowu, Tammy) (Entered: 05/08/2025) |
| 05/09/2025 | 46 | JOINT LETTER addressed to Judge Jeannette A. Vargas from M. Annie Houghton-Larsen dated 5/9/2025 re: Proposed Protective Order to Govern Discovery. Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit 1 - Proposed Protective Order, # 2 Exhibit 2 - Proposed Protective Order (Redline)).(Houghton-Larsen, Marie) (Entered: 05/09/2025) |
| 05/09/2025 | 47 | ORDER. The Proposed Protective Order filed as Exhibit 1 to ECF No. 46 was not executed by the parties. The parties should resubmit with the signature lines complete. (HEREBY ORDERED by Judge Jeannette A. Vargas) (Text Only Order) (Vargas, Jeannette) (Entered: 05/09/2025) |
| 05/12/2025 | 48 | JOINT LETTER addressed to Judge Jeannette A. Vargas from M. Annie Houghton-Larsen dated 5/12/2025 re: Resubmitted Proposed Protective Order to Govern Discovery. Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit 1 - Proposed Protective Order, # 2 Exhibit 2 - Proposed Protective Order (Redline)).(Houghton-Larsen, Marie) (Entered: 05/12/2025) |
| 05/12/2025 | 49 | PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Jeannette A. Vargas on 5/12/2025) (sgz) (Entered: 05/12/2025) |
| 05/14/2025 | 50 | PROPOSED STIPULATION AND ORDER. Document filed by Aubrey Drake Graham.. (Sullivan, Brady) (Entered: 05/14/2025) |
| 05/14/2025 | 51 | MOTION for Jack Ivan Lerner to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-31083232. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Charis Kubrin, Jack Lerner, Adam Dunbar, Kyle Winnen. (Attachments: # 1 Affidavit Affidavit in Support of Motion for Pro Hac Vice, # 2 Exhibit Certificate of Standing, # 3 Proposed Order Proposed Order).(Lerner, Jack) (Entered: 05/14/2025) |
| 05/14/2025 | 52 | LETTER MOTION to File Amicus Brief addressed to Judge Jeannette A. Vargas from Jack Lerner dated 05/14/2025. Document filed by Adam Dunbar, Charis Kubrin, Jack Lerner, |

| | | |
|---|---|---|
| | | Kyle Winnen. (Attachments: # 1 Exhibit Amicus Brief of Rap Scholars on Motion to Dismiss).(Lerner, Jack) (Entered: 05/14/2025) |
| 05/15/2025 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 51 MOTION for Jack Ivan Lerner to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-31083232. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bc)** (Entered: 05/15/2025) |
| 05/15/2025 | 53 | ORDER FOR ADMISSION PRO HAC VICE granting 51 Motion for Jack Ivan Lerner to Appear Pro Hac Vice. IT IS HEREBY ORDERED that Applicant is admitted to practice Pro Hac Vice in the above captioned case in the United States District Court for the Southern District of New York. All attorneys appearing before this Court are subject to the Local Rules of this Court, including the Rules governing discipline of attorneys. (Signed by Judge Jeannette A. Vargas on 5/15/2025) (sgz) (Entered: 05/15/2025) |
| 05/15/2025 | 54 | JOINT LETTER addressed to Judge Jeannette A. Vargas from M. Annie Houghton-Larsen dated 5/15/2025 re: Request for Judicial Notice Briefing Schedule. Document filed by Aubrey Drake Graham..(Houghton-Larsen, Marie) (Entered: 05/15/2025) |
| 05/15/2025 | 55 | ORDER. The parties have requested that the Court enter a briefing schedule with respect to Defendant's request for the Court to take judicial notice pursuant to Federal Rule of Evidence 201. Plaintiff shall have an opportunity to be heard on the propriety of the Court taking judicial notice of the materials in ECF No. 25 in his opposition to the motion to dismiss. The Court shall not accept separate briefing on this topic. (HEREBY ORDERED by Judge Jeannette A. Vargas) (Text Only Order) (Vargas, Jeannette) (Entered: 05/15/2025) |
| 05/20/2025 | 56 | JOINT STIPULATION ON THE PROTOCOL FOR DISCOVERY OF ELECTRONICALLY-STORED INFORMATION AND HARD COPY DOCUMENTS: To facilitate the exchange of electronically-stored information ("ESI"), documents, and hard copy documents pursuant to Fed. R. Civ. P. 26, Plaintiff Aubrey Drake Graham and Defendant UMG Recordings, Inc. (collectively the "Parties") in the above-captioned action (the "Action"), hereby stipulate to the following protocol for discovery of ESI and hardcopy documents (the "ESI Protocol"). The Parties commit to cooperate in good faith to comply with the provisions of this Stipulation and to comply with all applicable rules, including, but not limited to, the Federal Rules of Civil Procedure. As further set forth in this Stipulation & Order. SO ORDERED. (Signed by Judge Jeannette A. Vargas on 5/20/2025) (sgz) (Entered: 05/20/2025) |
| 05/20/2025 | 57 | ORDER granting 52 Letter Motion to File Amicus Brief. The Court, receiving no opposition to the motion, grants leave to file the amicus brief, as it may be useful to the Court's consideration of the issues presented. (HEREBY ORDERED by Judge Jeannette A. Vargas)(Text Only Order) (Vargas, Jeannette) (Entered: 05/20/2025) |
| 05/28/2025 | 58 | MEMORANDUM OF LAW in Opposition re: 42 MOTION to Dismiss *the Amended Complaint*. . Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 05/28/2025) |
| 06/11/2025 | 59 | REPLY MEMORANDUM OF LAW in Support re: 42 MOTION to Dismiss *the Amended Complaint*. . Document filed by UMG Recordings, Inc...(Ransom, Rollin) (Entered: 06/11/2025) |
| 06/25/2025 | 60 | MOTION for Anna Gotfryd to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-31289073. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Aubrey Drake Graham. (Attachments: # 1 Affidavit of Anna Gotfryd, # 2 Exhibit A - Illinois Certificate of Good Standing, # 3 Proposed Order Proposed Order).(Gotfryd, Anna) (Entered: 06/25/2025) |

| 06/26/2025 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 60 MOTION for Anna Gotfryd to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-31289073. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (rju)** (Entered: 06/26/2025) |
|---|---|---|
| 06/26/2025 | 61 | ORDER GRANTING ADMISSION TO PRACTICE, PRO HAC VICE granting 60 Motion for Anna Gotfryd to Appear Pro Hac Vice. It is hereby ORDERED, that Anna Gotfryd, Esq. is admitted to practice, pro hac vice, in the above captioned case to represent Aubrey Drake Graham in the United States District Court for the Southern District of New York, provided that the filing fee has been paid. (Signed by Judge Jeannette A. Vargas on 6/26/2025) (sgz) (Entered: 06/26/2025) |
| 06/30/2025 | | Minute Entry for proceedings held before Judge Jeannette A. Vargas: Oral Argument held on 6/30/2025. Present were Michael Gottleib, Anna Gotfryd and Brady Sullivan for the plaintiff and Rollin Ransom, Nicholas Primer, Katelin Everson and James Horner for the defendant. (Court Reporter Raquel Robles) (nmo) (Entered: 07/01/2025) |
| 07/01/2025 | 62 | MOTION for Meryl C. Governski to Withdraw as Attorney . Document filed by Aubrey Drake Graham. (Attachments: # 1 Proposed Order for Motion to Withdraw).(Sullivan, Brady) (Entered: 07/01/2025) |
| 07/02/2025 | 63 | ORDER granting 62 Motion to Withdraw as Attorney. Attorney Meryl Conant Governski terminated. (HEREBY ORDERED by Judge Jeannette A. Vargas)(Text Only Order) (Yin-Olowu, Tammy) (Entered: 07/02/2025) |
| 07/09/2025 | 64 | TRANSCRIPT of Proceedings re: ORAL ARGUMENT held on 6/30/2025 before Judge Jeannette A. Vargas. Court Reporter/Transcriber: Raquel Robles, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/30/2025. Redacted Transcript Deadline set for 8/11/2025. Release of Transcript Restriction set for 10/7/2025.. (McGuirk, Kelly) (Entered: 07/09/2025) |
| 07/09/2025 | 65 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a ORAL ARGUMENT proceeding held on 6/30/2025 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(McGuirk, Kelly) (Entered: 07/09/2025) |
| 07/14/2025 | 66 | MOTION to Serve *Third Party Kojo Asamoah by Alternative Means*. Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 07/14/2025) |
| 07/14/2025 | 67 | MEMORANDUM OF LAW in Support re: 66 MOTION to Serve *Third Party Kojo Asamoah by Alternative Means*. . Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 07/14/2025) |
| 07/14/2025 | 68 | DECLARATION of M. Annie Houghton-Larsen in Support re: 66 MOTION to Serve *Third Party Kojo Asamoah by Alternative Means*.. Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit 1 - Graham Subpoena to Asamoah, # 2 Exhibit 2 - Plaintiff's Amended Rule 26 Initial Disclosures, # 3 Exhibit 3 - UMG Rule 26(a) Initial Disclosures, # 4 Exhibit 4 - Capitol Process Affidavit of Due Diligence, # 5 Exhibit 5 - Nardello & Co. Affidavit of Due Diligence).(Houghton-Larsen, Marie) (Entered: 07/14/2025) |

| 07/21/2025 | 69 | DECLARATION OF INTEREST BY MONET MERCHAND. Document filed by Monet Merchand. (jca) (Additional attachment(s) added on 7/21/2025: # 1 Exhibit 1) (jca). (Entered: 07/21/2025) |
|---|---|---|
| 07/21/2025 | 70 | DECLARATION OF PUBLIC INTEREST & INDEXING CASE 1:25-CV-00399-JAV. Document filed by Monet Merchand. (jca) (Entered: 07/21/2025) |
| 07/21/2025 | 71 | DECLARATION OF INTEREST. Document filed by Monet Merchand. (jca) (Entered: 07/21/2025) |
| 08/05/2025 | 72 | VERIFIED MOTION FOR RECONSIDERATION, SUPPLEMENTATION, AND LEAVETO FILE AMICUS CURIAE BRIEF. Document filed by Joseph Anthony Reyna. (rro) (Entered: 08/06/2025) |
| 08/05/2025 | 74 | LETTER addressed to Clerk of Court from Joseph Anthony Reyna dated 7/23/2025 re: Supplemental Filing in Support of Amicus Curiae Motion. (ar) (Entered: 08/07/2025) |
| 08/06/2025 | 73 | MEMORANDUM OPINION AND ORDER re: 66 MOTION to Serve *Third Party Kojo Asamoah by Alternative Means*. filed by Aubrey Drake Graham. For the foregoing reasons, Plaintiffs motion for alternate service on Mr. Asamoah is GRANTED. The Clerk of Court is directed to terminate ECF No. 66. SO ORDERED. (Signed by Judge Jeannette A. Vargas on 8/6/2025) (jjc) (Entered: 08/06/2025) |
| 08/07/2025 | 75 | AFFIDAVIT OF SERVICE served on Kojo Menne Asamoah. Document filed by Aubrey Drake Graham..(Houghton-Larsen, Marie) (Entered: 08/07/2025) |
| 08/07/2025 | 76 | ORDER denying 72 Motion for Reconsideration. The Court DENIES the motion to reconsider, as the Court does not find that the proposed amicus submission would aid the Court in its consideration of this matter. (HEREBY ORDERED by Judge Jeannette A. Vargas)(Text Only Order) (Yin-Olowu, Tammy) (Entered: 08/07/2025) |
| 08/08/2025 | 77 | AFFIDAVIT OF SERVICE served on Kojo Menne Asamoah. Service was made by Mail. Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit 1 - Certified Mail Receipts).(Houghton-Larsen, Marie) (Entered: 08/08/2025) |
| 08/12/2025 | 78 | LETTER MOTION to Compel UMG Recordings, Inc. to collect, review, and produce the responsive custodial documents of Lucian Grainge addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated August 12, 2025. Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 08/12/2025) |
| 08/12/2025 | 79 | DECLARATION of M. Annie Houghton-Larsen in Support re: 78 LETTER MOTION to Compel UMG Recordings, Inc. to collect, review, and produce the responsive custodial documents of Lucian Grainge addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated August 12, 2025.. Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit 1 2025.03.10 First Set of RFPs, # 2 Exhibit 2 2025.05.07 Letter, # 3 Exhibit 3 2025.05.13 Letter, # 4 Exhibit 4 2025.03.23 Letter, # 5 Exhibit 5 2025.05.30 Email, # 6 Exhibit 6 2025.06.03 Second Set of RFPs, # 7 Exhibit 7 2025.06.06 Email, # 8 Exhibit 8 2025.07.03 Letter, # 9 Exhibit 9 2025.07.14 Third Set of RFPs, # 10 Exhibit 10 2025.07.16 Letter).(Houghton-Larsen, Marie) (Entered: 08/12/2025) |
| 08/12/2025 | 80 | LETTER MOTION to Seal addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated August 12, 2025. Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 08/12/2025) |
| 08/12/2025 | 81 | LETTER MOTION to Compel UMG Recordings, Inc. to produce discovery responsive to Requests for Production addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated August 12, 2025. Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 08/12/2025) |

| 08/12/2025 | 82 | ***SELECTED PARTIES***DECLARATION of M. Annie Houghton-Larsen in Support re: 81 LETTER MOTION to Compel UMG Recordings, Inc. to produce discovery responsive to Requests for Production addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated August 12, 2025.. Document filed by Aubrey Drake Graham, UMG Recordings, Inc.. (Attachments: # 1 Exhibit 1 - 2025.03.10 First Set of RFPs, # 2 Exhibit 2 - 2025.04.22 Letter, # 3 Exhibit 3 - 2025.05.12 Email, # 4 Exhibit 4 - 2025.06.03 Second Set of RFPs, # 5 Exhibit 5 - Redacted Contract)Motion or Order to File Under Seal: 80 .(Houghton-Larsen, Marie) (Entered: 08/12/2025) |
|---|---|---|
| 08/12/2025 | 83 | DECLARATION of M. Annie Houghton-Larsen in Support re: 81 LETTER MOTION to Compel UMG Recordings, Inc. to produce discovery responsive to Requests for Production addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated August 12, 2025.. Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit 1 - 2025.03.10 First Set of RFPs, # 2 Exhibit 2 - 2025.04.22 Letter, # 3 Exhibit 3 - 2025.05.12 Email, # 4 Exhibit 4 - 2025.06.03 Second Set of RFPs, # 5 Exhibit 5 - Redacted Contract). (Houghton-Larsen, Marie) (Entered: 08/12/2025) |
| 08/13/2025 | 84 | DECLARATION of M. Annie Houghton-Larsen re: 73 Memorandum & Opinion, . Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit 1 - Affidavits of Service).(Houghton-Larsen, Marie) (Entered: 08/13/2025) |
| 08/14/2025 | 85 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jeannette A. Vargas from Rollin A. Ransom dated August 14, 2025 re: 78 LETTER MOTION to Compel UMG Recordings, Inc. to collect, review, and produce the responsive custodial documents of Lucian Grainge addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated August 12, 2025. . Document filed by UMG Recordings, Inc...(Ransom, Rollin) (Entered: 08/14/2025) |
| 08/14/2025 | 86 | DECLARATION of Sir Lucian Grange, CBE in Opposition re: 78 LETTER MOTION to Compel UMG Recordings, Inc. to collect, review, and produce the responsive custodial documents of Lucian Grainge addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated August 12, 2025.. Document filed by UMG Recordings, Inc...(Ransom, Rollin) (Entered: 08/14/2025) |
| 08/14/2025 | 87 | LETTER RESPONSE in Opposition to Motion addressed to Judge Jeannette A. Vargas from Rollin A. Ransom dated August 14, 2025 re: 81 LETTER MOTION to Compel UMG Recordings, Inc. to produce discovery responsive to Requests for Production addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated August 12, 2025. . Document filed by UMG Recordings, Inc...(Ransom, Rollin) (Entered: 08/14/2025) |
| 08/15/2025 | 88 | LETTER RESPONSE in Support of Motion addressed to Judge Jeannette A. Vargas from Rollin A. Ransom dated August 15, 2025 re: 80 LETTER MOTION to Seal addressed to Judge Jeannette A. Vargas from Michael J. Gottlieb dated August 12, 2025. . Document filed by UMG Recordings, Inc...(Ransom, Rollin) (Entered: 08/15/2025) |
| 08/15/2025 | 89 | DECLARATION OF INTEREST OF MONET MERCHAND. (jjc) (Entered: 08/18/2025) |
| 08/18/2025 | 90 | MOTION to Serve *Third Party Joshua Delseni A/K/A Josh Kaplan by Alternative Means*. Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 08/18/2025) |
| 08/18/2025 | 91 | MEMORANDUM OF LAW in Support re: 90 MOTION to Serve *Third Party Joshua Delseni A/K/A Josh Kaplan by Alternative Means*. . Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 08/18/2025) |
| 08/18/2025 | 92 | DECLARATION of M. Annie Houghton-Larsen in Support re: 90 MOTION to Serve *Third Party Joshua Delseni A/K/A Josh Kaplan by Alternative Means*.. Document filed by Aubrey Drake Graham. (Attachments: # 1 Exhibit 1 - Plaintiff's Amended Rule 26 Initial Disclosures, # 2 Exhibit 2 - UMG Rule 26(a) Initial Disclosures, # 3 Exhibit 3 - Josh |

| | | |
|---|---|---|
| | | Kaplan Subpoena, # 4 Exhibit 4 - Capitol Process Affidavit of Due Diligence, # 5 Exhibit 5 - Nardello Affidavit of Due Diligence, # 6 Exhibit 6 - 2025.07.29 Email to Mr. Kaplan, # 7 Exhibit 7 - Lawsuits against Mr. Kaplan).(Houghton-Larsen, Marie) (Entered: 08/18/2025) |
| 08/21/2025 | 93 | NOTICE of Withdrawal re: 90 MOTION to Serve *Third Party Joshua Delseni A/K/A Josh Kaplan by Alternative Means..* Document filed by Aubrey Drake Graham..(Gottlieb, Michael) (Entered: 08/21/2025) |
| 08/22/2025 | 94 | ORDER withdrawing 90 Motion to Serve (HEREBY ORDERED by Judge Jeannette A. Vargas)(Text Only Order) (Vargas, Jeannette) (Entered: 08/22/2025) |
| 08/22/2025 | 95 | ORDER granting 80 Motion to Seal. Plaintiff and UMG's request (ECF Nos. 80, 88) for permission to file under seal a contract between UMG Recordings, Inc. ("UMG") and Kendrick Lamar Duckworth, as produced by UMG in redacted form with the designation Attorney's Eyes Only (the "Lamar Contract"), is GRANTED. As further set forth in this Order. Plaintiff is therefore authorized to file the Lamar Contract under seal. The Clerk of Court is directed to terminate ECF No. 80. SO ORDERED.. (Signed by Judge Jeannette A. Vargas on 8/22/2025) (ks) (Entered: 08/22/2025) |
| 10/09/2025 | 96 | OPINION AND ORDER re: 42 MOTION to Dismiss *the Amended Complaint* filed by UMG Recordings, Inc. Defendant's motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate ECF Nos. 42, 78, and 81, and to close the case. SO ORDERED. (Signed by Judge Jeannette A. Vargas on 10/9/2025) (sgz) (Entered: 10/09/2025) |
| 10/29/2025 | 97 | NOTICE OF APPEAL from 96 Memorandum & Opinion,. Document filed by Aubrey Drake Graham. Filing fee $ 605.00, receipt number ANYSDC-31916781. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Gottlieb, Michael) (Entered: 10/29/2025) |
| 10/29/2025 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 97 Notice of Appeal. (tp) (Entered: 10/29/2025) |
| 10/29/2025 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 97 Notice of Appeal, filed by Aubrey Drake Graham were transmitted to the U.S. Court of Appeals. (tp) (Entered: 10/29/2025) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/03/2025 21:57:36 | | |
| **PACER Login:** | wf000001 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-00399-JAV |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |

# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
AUBREY DRAKE GRAHAM,                                               :
                                                                  :
                               Plaintiff,                         :           25-CV-0399 (JAV)
                                                                  :
              -v-                                                 :           OPINION AND ORDER
                                                                  :
UMG RECORDINGS, INC.,                                             :
                                                                  :
                               Defendant.                         :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

    This case arises from perhaps the most infamous rap battle in the genre's

history, the vitriolic war of words that erupted between superstar recording artists

Aubrey Drake Graham ("Drake") and Kendrick Lamar Duckworth ("Lamar" or

"Kendrick Lamar") in the spring of 2024. Over the course of 16 days, the two artists

released eight so-called "diss tracks," with increasingly heated rhetoric, loaded

accusations, and violent imagery. The penultimate song of this feud, "Not Like Us"

by Kendrick Lamar, dealt the metaphorical killing blow. The song contains lyrics

explicitly accusing Drake of being a pedophile, set to a catchy beat and propulsive

bassline. "Not Like Us" went on to become a cultural sensation, achieving immense

commercial success and critical acclaim.

    Both Drake and Kendrick Lamar have recording contracts with Defendant

UMG Recordings, Inc. ("UMG" or "Defendant"). Drake alleges that UMG

intentionally published and promoted "Not Like Us" while knowing that the song's

insinuations that he has sexual relations with minors were false and defamatory.

Drake has brought this action against UMG for defamation, harassment in the second degree, and violation of section 349 of the New York General Business Law. Before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the Court concludes that the allegedly defamatory statements in "Not Like Us" are nonactionable opinion, the motion to dismiss is GRANTED.

## LEGAL STANDARDS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff may not simply allege facts that are consistent with liability; the complaint must "nudge plaintiff's claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (cleaned up); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025). The Court need not credit "legal conclusions couched as factual allegations," however. *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quotation marks omitted).

2

The Court may also consider "documents incorporated in the complaint by reference[ ] and matters of which judicial notice may be taken." *Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 243 (S.D.N.Y. 2025) (citation omitted). Judicial notice is appropriate when a matter is not subject to reasonable dispute because it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2).

## BACKGROUND

The following background is largely taken from the allegations in the Amended Complaint, which are assumed true for purposes of this motion. ECF No. 41 ("Am. Compl."). Additionally, Defendant requests the Court take judicial notice of certain extrinsic evidence pursuant to Rule 201 of the Federal Rules of Evidence. *See* ECF No. 44 ("Req. J. Not."). These exhibits include the lyrics of the songs released as part of Drake and Kendrick Lamar's rap battle. The dates on which these songs were released and the lyrics of these songs are not reasonably subject to dispute, *see Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 207 (S.D.N.Y. 2019), and the songs themselves are (with one exception) all referenced in the Amended Complaint. Accordingly, the Court will take judicial notice of Exhibits H through I and Exhibits K through O to the Request for Judicial Notice to understand Defendant's alleged statements in their "necessary and proper context." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. 2020) (cleaned up); *see also Condit v. Dunne*, 317 F. Supp. 2d 344, 356-57 (S.D.N.Y. 2004) (taking

3

judicial notice of submissions that place defendant's comments "in the broader social context" to "aid the Court['s]" determination of the adequacy of plaintiff's defamation claims).

Exhibits B, J, and P are directly referenced and relied upon in Plaintiff's Amended Complaint, Req. J. Not. at 1-4, so those documents are likewise properly before the Court. *See Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003).[1] And because the document "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), the Court also takes judicial notice of the search results from the *New York Times* website in Exhibit C. The Court takes judicial notice of the existence of the listed articles, but not the truth of their contents. *See Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921, 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) (taking judicial notice of four websites on motion to dismiss because courts in this Circuit "generally ha[ve] the discretion to take judicial notice of internet material"); *see also Patsy's Italian Restaurant, Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y.2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet.").

## A. Factual Allegations

Drake is a prominent recording artist and songwriter, among other public-facing endeavors. Am. Compl., ¶ 26. Drake has had a successful music career

---

[1] During oral argument, Plaintiff agreed that these exhibits were properly before the Court in its consideration of the motion to dismiss. ECF No. 64 ("Hr'g Tr.") at 39:11-41:16.

under Defendant UMG for at least 20 years.  *Id.*, ¶¶ 26-27.  UMG uses its brands and imprints, or labels, to provide its music artists with the means to create, promote, and distribute their music commercially.  *Id.*, ¶ 27.  Defendant, through Universal Music Publishing Group ("UMPG"), holds exclusive publishing and distribution rights to Drake's music as well as that of artist Kendrick Lamar.  *Id.*

On April 19, 2024, Drake released a diss track directed at Kendrick Lamar called "Push Ups."  Req. J. Not., Ex. H.  In "Push Ups," Drake mocks Lamar's height and shoe size, Req. J. Not., Ex. H ("How the f*** you big steppin' with a size-seven men's on/. . . Pipsqueak, pipe down"), and questions Lamar's success, *id.* ("You ain't in no big three/. . . I'm at the top of the mountain, so you tight now/Just to have this talk with your a**, I had to hike down.").

A few days later, Drake released "Taylor Made Freestyle," in which he used artificial intelligence-generated voices of deceased rapper 2Pac and of rapper Snoop Dogg to goad Lamar.  Req. J. Not. at 2.  In the track, "2Pac" and "Snoop Dogg" share their disappointment that Lamar had not yet responded to "Push Ups."  *See id.*, Ex. I ("Kendrick, we need ya, the West Coast savior/. . . You seem a little nervous about all the publicity/. . . you gotta show this f***in' owl[2] who's boss on the West.").  Drake, in his own voice, further taunts Kendrick for failing to come up with a satisfactory response, saying, "I know you're in that NY apartment, you strugglin' right now, I know it/In the notepad doing lyrical gymnastics, my boy."  *Id.*  Drake

---

[2] Drake's clothing brand is October's Very Own, or OVO, which is represented by an owl.  Am. Compl., ¶ 36.

also surmises that Kendrick was purposefully delaying his response because artist Taylor Swift had just released a new album. *Id.* ("[S]hout out to Taylor Swift/Biggest gangster in the music game right now/. . . She got the whole pgLang on mute like that Beyoncé challenge, y'all boys quiet for the weekend.").

Lamar fired back at Drake in "Euphoria," which was released on April 30, 2024. Req. J. Not. at 3. In the track, Lamar claims, "I make music that electrify 'em, you make music that pacify 'em" and that he would "spare [Drake] this time, that's random acts of kindness." Req. J. Not., Ex. K. He accuses Drake of fabricating his claims: "Know you a master manipulator and habitual liar too/But don't tell no lie about me and I won't tell truths 'bout you." *Id*; *see also* Am. Compl., ¶¶ 14, 77. He insults Drake's fashion sense, Req. J. Not., Ex. K ("I hate the way that you walk, the way that you talk, I hate the way that you dress"), further raps "I believe you don't like women, it's real competition, you might pop a** with 'em," and taunts Drake for being a coward with his responses, *id.* ("I hate the way that you sneak diss, if I catch flight, it's gon' be direct.").

On May 3, 2024, the feud between Drake and Lamar escalated, as they lobbed increasingly vicious, personal accusations at each other over the course of the day. First, Lamar released "6:16 in LA," Req. J. Not. at 3, in which he calls Drake a "terrible person." *Id.,* Ex. L. Lamar accuses Drake of "playin' dirty with propaganda" and raps that if Drake was "street-smart" then he would have "caught [on] that [his] entourage is only [there] to hustle" him." *Id.*

6

Drake's next response arrived later that day in "Family Matters."  Drake jabs at Lamar's relationship with his partner, Req. J. Not., Ex. M ("You the Black messiah wifin' up a mixed queen/And hit vanilla cream to help out with your self-esteem/On some Bobby sh**, I wanna know what Whitney need") and implies that Lamar physically abused her, *id.* ("You a dog and you know it, you just play sweet/Your baby mama captions always screamin', 'Save me'/You did her dirty all your life, you tryna make peace.").  Moreover, Drake calls into question whether Lamar is the biological father of one of his children.  *Id.* ("I heard that one of 'em little kids might be Dave Free/Don't make it Dave Free's").

Almost immediately after the release of "Family Matters," Lamar unleashed the scathing "Meet the Grahams," Req. J. Not. at 3, in which he accuses Drake of being a "deadbeat" father and of hiding the existence of other children.  Req. J. Not., Ex. N ("You lied about your son, you lied about your daughter, huh/You lied about them other kids that's out there hopin' that you come.").  Lamar also alleges that Drake has "gamblin' problems, drinkin' problems, pill-poppin' and spendin' problems/Bad with money, wh***house/Solicitin' women problems, therapy's a lovely start." *Id.*  He further insinuates that Drake was a "predator" and that Drake "should die so all of these women can live with a purpose." *Id.*

The next day, on May 4, 2024, Lamar released "Not Like Us."  Am. Compl., ¶¶ 6-7.  "Not Like Us" explicitly names Drake and his associates as pedophiles. *Id.*, ¶¶ 60-62.  Specifically, the track contains the following lyrics:

> Say, Drake, I hear you like 'em young
> You better not ever go to cell block one

> To any b**** that talk to him and they in love
> Just make sure you hide your lil' sister from him
> They tell me Chubbs the only one that get your hand-me-downs
> And PARTY at the party, playin' with his nose now
> And Baka got a weird case, why is he around?
> Certified Lover Boy? Certified pedophiles
>
> Wop, wop, wop, wop, wop, Dot, f*** 'em up
> Wop, wop, wop, wop, wop, I'ma do my stuff
> Why you trollin' like a b****? Ain't you tired?
> Tryna strike a chord and it's probably A-Minor

Am. Compl., Ex. A.[3]

On May 5, 2025, Drake responded in "The Heart Part 6," Req. J. Not. at 3, directly denying Lamar's allegations of pedophilia, *id.*, Ex. O ("I never been with no one underage, but now I understand why this the angle that you really mess with/Just for clarity, I feel disgusted, I'm too respected/If I was f***ing young girls, I promise I'd have been arrested/I'm way too famous for this s*** you just suggested/. . . Drake is not a name that you gon' see on no sex offender list."); *see also* Am. Compl., ¶ 102. In the track, Drake further sneers that "[t]his Epstein angle was the s*** I expected" and accused Lamar of wanting to "misdirect." Req. J. Not., Ex. O. Drake also alleges that he had planted some of the information Lamar has used against him. *Id.* ("We plotted for a week, and then we fed you the information/. . . But you so thirsty, you not concerned with investigation/. . . You gotta learn to fact-check things and be less impatient.").

---

[3] Chubbs, Party, and Baka are associates of Drake's, while K. Dot is a nickname for Kendrick Lamar. Req. J. Not., Ex. J at 3-4.

8

"Not Like Us" was a huge commercial success.  It has gained immense popularity on streaming and social media platforms; it has been streamed globally more than 1.4 billion times on Spotify alone as of April 2025.  Am. Compl., ¶¶ 7, 10, 58.  On November 8, 2024, the Recording Academy nominated "Not Like Us" for several Grammy Awards, *id.*, ¶ 142, and in February 2025, it won Record of the Year, *id.*, ¶ 164.  A week later, on February 9, 2025, Kendrick Lamar performed "Not Like Us" live during the Apple Music Super Bowl LIX Halftime Show.  *Id.*, ¶ 165.  The performance is alleged to be the most-watched Super Bowl Halftime Show of all time with over 133.5 million views.  *Id.*, ¶ 168.

## B.  Procedural History

Plaintiff brings claims for defamation, harassment in the second degree, and violation of New York General Business Law Section 349 based upon UMG's publication and promotion of "Not Like Us" (the "Recording").  Defendant has filed a motion to dismiss the Amended Complaint.  ECF No. 42.  On June 30, 2025, the Court heard oral argument from both parties concerning the motion to dismiss and the request for judicial notice.

Plaintiff contends that he was defamed when Defendant "decided to publish, promote, exploit, and monetize allegations that it understood were not only false, but dangerous."  Am. Compl., ¶ 8.  Plaintiff alleges that "[t]he Recording repeatedly accuses Drake of engaging in criminal acts, including pedophilia and/or other acts that would require registering as a sex offender and of being registered as a sex offender."  *Id.*, ¶ 59.

9

The Amended Complaint alleges that the song implies that Lamar has "*heard* (albeit from undisclosed sources and concerning undisclosed individuals) that Drake has a predilection for underage women." *Id.*, ¶ 60. According to the Amended Complaint, the reference to "cell block one" is "a thinly veiled threat that Drake should be careful that he never ends up in prison, a place where child predators are notoriously the targets of violence." *Id.* The line "Certified Lover Boy? Certified pedophiles" is a "perverse reference to Drake's 2021 album 'Certified Lover Boy.'" *Id.*, ¶ 61. Plaintiff argues that the use of the term "certified" "communicates that Drake has been ***found*** to be a pedophile." ECF No. 58 ("Opp'n Br.") at 9. And the final line of this passage plays on the "dual meaning of minor—a person under the age of 18 and a musical scale." Am. Compl.,. ¶ 61.

Plaintiff further cites as defamatory the Recording's descriptions of Drake as "Malibu most wanted" and a "predator," and that his name "gotta be registered and placed on neighborhood watch." *Id.*

The associated music video (the "Video") shows "images associated with sex trafficking" to reinforce the pedophilia accusation. *Id.*, ¶ 7. The Recording is also accompanied by an album image of Drake's home in Toronto (the "Image"), which is plastered in icons used by law enforcement and public safety applications to denote the residences of registered sex offenders. *Id.*, ¶¶ 65-66.

10

## DISCUSSION

### I.   Defamation Claims

"Under New York law, the elements of a defamation claim are (1) a defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party, (4) that is false, (5) made with the applicable level of fault, (6) causing injury, and (7) not protected by privilege." *Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, No. 15 CV 4779-LTS-SN, 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016).  A defamatory statement is one that "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 690 (S.D.N.Y. 2022).

The issue in this case is whether "Not Like Us" can reasonably be understood to convey as a factual matter that Drake is a pedophile or that he has engaged in sexual relations with minors.  In light of the overall context in which the statements in the Recording were made, the Court holds that it cannot.

### A. Fact vs. Opinion

"Under the First Amendment, there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974).  [O]nly assertions of facts are capable of being proven false." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 460 (S.D.N.Y. 2012) (citation omitted).  Moreover, "the New York Constitution provides for absolute protection of opinions." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 178 (2d Cir.

11

2000).  Thus, courts must "distinguish[] between statements of fact, which may be defamatory and expressions of opinion, which 'are not defamatory'" and have the full protection of the New York Constitution.  *Live Face on Web, LLC*, 2016 WL 1717218, at *2 (quoting *Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 597 (S.D.N.Y. 2014)).

Whether a challenged statement is fact or opinion is a legal question.  *Celle*, 209 F.3d at 178.  Plaintiff argues that it is inappropriate for the Court to determine, at the pleading stage, whether a reasonable listener would perceive the Recording as fact or opinion.  Opp'n Br. at 13-14; Hr'g Tr. at 24:11-26:8.  Yet, because this is a question of law, New York courts routinely resolve this question at the motion to dismiss stage.  *See, e.g.*, *Brian v. Richardson*, 87 N.Y.2d 46, 52 (1995) (holding, on a motion to dismiss, that challenged statement constitutes opinion); *Dfinity Found. v. New York Times Co.*, 702 F. Supp. 3d 167, 174 (S.D.N.Y. 2023), *aff'd*, No. 23-7838-cv, 2024 WL 3565762 (2d Cir. July 29, 2024) ("Whether a statement is a "fact [or] opinion is 'a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean' and is appropriately raised at the motion to dismiss stage."); *Greenberg v. Spitzer*, 62 N.Y.S.3d 372, 385-86 (2d Dep't 2017) (holding that, because whether a statement is defamatory "presents a legal issue to be resolved by the court," defamation actions are particularly suitable for resolution on a motion to dismiss).  "There is particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of

12

constitutionally protected freedoms." *Dfinity Found.*, 702 F. Supp. 3d at 173

(cleaned up); *accord Biro*, 963 F. Supp. 2d at 279.

In distinguishing between facts and opinion, three factors guide the Court's

consideration:

> (1) whether the specific language in issue has a precise
> meaning which is readily understood;
>
> (2) whether the statements are capable of being proven
> true or false; and
>
> (3) whether either the full context of the communication
> in which the statement appears or the broader social
> context and surrounding circumstances are such as to
> signal readers or listeners that what is being read or
> heard is likely to be opinion, not fact.

*Brian*, 87 N.Y.2d at 51 (cleaned up).  The Court conducts this inquiry through the

lens of a "reasonable" listener.  *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997).

Plaintiff's suit is focused on a single factual message conveyed by the

Recording, "the false allegation that Drake is a pedophile."  Hr'g Tr. at 36:16-19; *see*

*also* Opp'n Br. at 9 ("[T]he Recording is myopically focused on ensuring that

listeners take one message away from the song: Drake is a pedophile.").  This

statement has a readily understandable meaning, and it is capable of being proven

true or false.  But "even accusations of criminal behavior are not actionable if,

understood in context, they are opinion rather than fact."  *Hayashi v. Ozawa*, No.

17-CV-2558 (AJN), 2019 WL 1409389, at *2 (S.D.N.Y. Mar. 28, 2019).

Thus, the Court will focus its analysis on the third factor.  This inquiry is a

holistic one, which looks "to the over-all context in which the assertions were made,"

*Brian*, 87 N.Y.2d at 51, in order to assess "the impact that the statements would have on a reasonable [listener]," *Levin*, 119 F.3d at 197.  Context includes the forum in which the communication was published, the surrounding circumstances, the tone and language of the communication, and its apparent purpose.  *See Brian*, 87 N.Y.2d 51-52; *see also Hayashi*, 2019 WL 1409389, at *2.

> ### 1.   Forum

To start, the Court considers the forum in which the allegedly defamatory statements appear, as that is a "useful gauge" for determining whether the reasonable reader will treat it more readily as opinion than fact.  *Brian*, 87 N.Y.2d at 52.  For example, the average listener is more likely to understand statements made on a news program or in a journalistic piece to be factual, while statements made in the opinion page of a newspaper or on an internet comment page are generally perceived as opinion.  *See, e.g.*, *Millus v. Newsday, Inc.*, 89 N.Y.2d 840, 842 (1996) (appearance of statement on editorial page indicative of opinion); *Brian*, 87 N.Y.2d at 52 ("[T]he common expectation is that the columns and articles published on a newspaper's Op Ed sections will represent the viewpoints of their authors and, as such, contain considerable hyperbole, speculation, diversified forms of expression and opinion."); *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 415 (1st Dep't 2011) ("The culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a 'freewheeling, anything-goes writing style.'"); *Ganske*, 480 F. Supp. 3d at 553 ("[T]he fact that [the] allegedly defamatory statement . . . appeared on

Twitter conveys a strong signal to a reasonable reader that this was [d]efendant's opinion."); *Live Face on Web, LLC*, 2016 WL 1717218, at *3 ("[T]he media vehicles used to disseminate the [alleged defamation]—a Wordpress blog, social media posts, and an unsigned press release complaining about litigation tactics—suggest to readers that they contain opinions, not facts, and they are written in an amateurish fashion."). The forum in which a statement appears is not dispositive of the fact versus opinion inquiry, but it does provide contextual indicia that can inform the Court's analysis.

The forum here is a music recording, in particular a rap "diss track," with accompanying video and album art. Diss tracks are much more akin to forums like YouTube and X, which "encourag[e] a freewheeling, anything-goes writing style," than journalistic reporting. *Sandals Resorts*, 86 A.D.3d at 43 (quotation marks omitted). The average listener is not under the impression that a diss track is the product of a thoughtful or disinterested investigation, conveying to the public fact-checked verifiable content.

### 2.    Surrounding Circumstances

Next, the Court considers the "full context of the communication in which the statement appears," including the "setting surrounding the communication." *Steinhilber v. Alphone*, 68 N.Y.2d 283, 294 (1986). The fact that the Recording was made in the midst of a rap battle is essential to assessing its impact on a reasonable listener. "Even apparent statements of fact may assume the character of statements of opinion . . . when made in public debate, heated labor dispute, or

other circumstances in which an audience may anticipate the use of epithets, fiery rhetoric or hyperbole." *Id.* (cleaned up); *see also Jacobus v. Trump*, 51 N.Y.S.3d 330, 336 (N.Y. Sup. Ct.), *aff'd*, 64 N.Y.S.3d 889 (1st Dep't 2017) ("As context is key, defamatory statements advanced during the course of a heated public debate, during which an audience would reasonably anticipate the use of epithets, fiery rhetoric or hyperbole, are not actionable." (cleaned up)).

The decision by the New York Court of Appeals in *Steinhilber* is instructive in this regard. In *Steinhilber*, the allegedly defamatory statements were published in a tape-recorded telephone message that was played automatically to anyone dialing the private phone number that was given to labor union members. 68 N.Y.2d at 287. The union had assessed a fine against Plaintiff after she had defied a strike order, and the phone message appeared after she had failed to pay the fine. *Id.* at 294. The New York Court of Appeals found that "the most significant circumstance" was "that the message was prepared and played as part of the union's effort to punish a former member." *Id.* The court highlighted that, in "the emotional aftermath of a strike when animosity would be expected to persist— particularly against a former member who was seen as a 'traitor' to the cause," that a listener would not expect that any insults lobbed would be factual in nature. *Id.*

Similarly, in *Torain v. Liu*, the Second Circuit affirmed the dismissal of a complaint at the pleading stage, holding that as a matter of law, comments that the plaintiff was a "sick racist pedophile," a "loser pedophile," a "broadcaster pedophile," a "child predator," a "lunatic," and that he "must be put behind bars" were

16

expressions of opinion. 279 F. App'x 46, 46 (2d Cir. 2008). In reaching this conclusion, the Second Circuit relied upon the context in which these statements were made. Specifically, the comments were part of a "war of words" between disk-jockeys at rival radio stations that received "extensive media coverage and commentary." *Id.* at 47. As part of that feud, the plaintiff made comments on air suggesting that he would sexually abuse the minor daughter of the defendant. *Id.* The Second Circuit concluded that, in this context, no reasonable listener could have perceived the defendant's responses to "state or imply assertions of objective fact." *Id.*

In *Rapaport v. Barstool Sports, Inc.*, the district court found that an audience would not reasonably conclude that statements suggesting that the plaintiff had herpes and had abused his ex-girlfriend constituted assertions of facts when published in a six-minute diss track music video. No. 18-CV-8783 (NRB), 2021 WL 1178240, at *15 (S.D.N.Y. Mar. 29, 2021), *aff'd*, No. 22-2080-CV, 2024 WL 88636 (2d Cir. Jan. 9, 2024). The district court observed that the statements were "delivered in the midst of a public and very acrimonious dispute between [the parties] that would have been obvious to even the most casual observer." *Id.* The video in question reviewed the "recent history of the acrimonious dispute that resulted in Rapaport's termination just days before the video's publication," and also included a photoshopped photo of the defendant in a derogatory manner. *Id.* That clear background "contextualize[d] for the audience that the statements in the video are

17

being offered in the midst of a hostile public feud between Rapaport and Barstool."

*Id.*

Just as in *Steinhilber*, *Rapaport*, and *Torain*, the Recording was published as part of a heated public feud, in which both participants exchanged progressively caustic, inflammatory insults and accusations. This is precisely the type of context in which an audience may anticipate the use of "epithets, fiery rhetoric or hyperbole" rather than factual assertions. A rap diss track would not create *more* of an expectation in the average listener that the lyrics state sober facts instead of opinion than the statements at issue in those cases.

For example, in "Euphoria" Lamar calls Drake a "master manipulator and habitual liar" and "a scam artist." Req. J. Not., Ex. K. Drake responds in "Family Matters" by heavily implying that Lamar is a domestic abuser. *See id.*, Ex. M. He also raps that he "heard" that one of Lamar's sons may not be biologically his. *Id.* ("Why you never hold your son and tell him, 'Say cheese'?/We could've left the kids out of this, don't blame me/. . . I heard that one of 'em little kids might be Dave Free").

In "Meet the Grahams," Lamar takes issue with Drake involving his family members in their feud. Req. J. Not., Ex. N ("Dear Aubrey/I know you probably thinkin' I wanted to crash your party/But truthfully, I don't have a hatin' bone in my body/This supposed to be a good exhibition within the game/But you f***ed up the moment you called out my family's name/Why you had to stoop so low to discredit some decent people?"). In that same track, Lamar alleges that Drake uses

the weight loss drug Ozempic. *Id.* ("Don't cut them corners like your daddy did, f***

what Ozempic did/Don't pay to play with them Brazilians, get a gym

membership."). Lamar also insinuates that Drake knowingly hires sexual

offenders. *See id.* ("Grew facial hair because he understood bein' a beard just fit

him better/He got sex offenders on ho-VO that he keep on a monthly allowance.").

Of particular relevance, in "Taylor Made Freestyle," Drake challenged Lamar

to make the pedophilia accusations at issue. Using the artificially generated voice

of deceased rapper 2Pac, Drake goads Lamar:

> Kendrick, we need ya, the West Coast savior
> Engraving your name in some hip-hop history
> If you deal with this viciously
> You seem a little nervous about all the publicity
> F*** this Canadian lightskin, Dot
> We need a no-debated West Coast victory, man
> Call him a b**** for me
> Talk about him likin' young girls, that's a gift from me
> Heard it on the Budden Podcast, it's gotta be true

*Id.*, Ex. I. It is in this context in which such lyrics as "Say, Drake, I hear you like

'em young" from the Recording must be assessed. The similarity in the wording

suggests strongly that this line is a direct callback to Drake's lyrics in the prior

song.

Plaintiff argues that the Court should ignore the songs that came before and

assess "Not Like Us" as a "singular entity." Hr'g Tr. at 39:14-15; *see also* Opp'n Br.

at 15-17. Plaintiff argues that the average listener is not someone who is familiar

with every track released as part of the rap battle before listening to the

Recording. Hr'g Tr. at 32:17-33:2; 35:9-19. Because the Recording has achieved a

19

level of "cultural ubiquity" far beyond the other seven songs, Plaintiff contends that

Court should not consider those other tracks in assessing how the average listener

of the Recording would perceive the allegations regarding Drake.  Hr'g Tr. at 36:10-

19; *id.* at 39:11-17; *see also* Opp'n Br. at 15.

There are a number of flaws with this argument.  "Not Like Us" cannot be

viewed in isolation but must be placed in its appropriate factual context.  *Immuno*

*AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 254 (1991) ("[S]tatements must first be

viewed in their context in order for courts to determine whether a reasonable person

would view them as expressing or implying *any* facts.").  Here, that factual context

is the insults and trash talking that took place via these diss tracks in the days and

weeks leading up to the publication of "Not Like Us."  The songs released during

this rap battle are in dialogue with one another.  They reference prior songs and

then respond to insults and accusations made by the rival artist.  *See, e.g.*, Am.

Compl., ¶ 63.  The songs thus must be read together to fully assess how the general

audience would perceive the statements in the Recording.  *See, e.g.*, *Celle*, 209 F.3d

at 187 (holding that two newspaper articles had to be read together to understand

full context).

Notably, the Second Circuit rejected a similar argument in *Torain*.  There,

the plaintiff argued "that the district court improperly considered the statements

that he made during his 'war of words' because they were not included in his

complaint."  279 F. App'x at 47 n.1.  The Second Circuit held that, because the court

must look at the overall context in which a statement was made in order to

20

determine if it is actionable, the district court properly considered all statements made during the feud between the disk jockeys, regardless of whether they were included in the complaint.  *Id.*

Moreover, while Plaintiff is correct that the intended audience for the Recording is the general public, and not a subset of rap devotees or Kendrick Lamar fans, Opp'n Br. at 15, the recordings in the rap battle were likewise released to the general public.  These were not songs accessible to a select niche few, but tracks released by commercially successful artists.  While "Not Like Us" may be the most popular of the diss tracks, the other songs were hits in their own right, with streams in the tens of millions or hundreds of millions.  Am. Compl., ¶ 202 n.280.

Additionally, it was not just the Recording which gained a cultural ubiquity, but the rap battle itself.  In deciding this motion to dismiss, the Court need not blind itself to the public attention garnered by this particular rap battle.  The Court takes judicial notice of the extensive mainstream media reporting that surrounded the release of "Not Like Us" and the associated feud between Drake and Lamar.  *See, e.g.*, Req. J. Not., Exs. B, C, P.[4]  Accordingly, the Court must consider the entire

---

[4] *See also* Mark Savage, *Drake and Kendrick Lamar beef explained—what has happened and why?*,  BBC News (May 9, 2024), accessed at https://www.bbc.com/news/entertainment-arts-68739398 [https://perma.cc/AT4M-S3GH]; Dani Di Placido, *Drake vs. Kendrick Lamar—Who Won?*, Forbes (May 6, 2024), accessed at https://www.forbes.com/sites/danidiplacido/2024/05/06/drake-vs-kendrick-lamar---who-won/ [https://perma.cc/668W-3YVL]; Janay Kingsberry and Herb Scribner, *Kendrick Lamar and Drake's feud got heated and ugly.  Here's what happened.*, Washington Post (May 6, 2024), accessed at https://www.washingtonpost.com/style/2024/05/06/drake-kendrick-beef-diss-tracks/ [https://perma.cc/GD95-2CJ4]; Neil Shah, *Kendrick Lamar vs. Drake:  A New Rap Beef for the Streaming Era*, Wall St. J. (May 7, 2024), accessed at

rap battle to assess whether the average listener would take Lamar's statements as objective fact or opinion.

Perhaps most fatally for Plaintiff's argument, it would render protection for artistic expression dependent upon an impermissible retroactive analysis. At the time he released "Not Like Us," Kendrick Lamar could not have been aware that it would break streaming records, win Record of the Year at the Grammys, or be featured at the Super Bowl Halftime Show. Yet Plaintiff would have the Court divorce the Recording from the context in which it was created because of these subsequent events. Whether publications constitute actionable fact or protected opinion cannot vary based upon the popularity they achieve. Constitutional guarantees do not rest on such a flimsy foundation.

Plaintiff counters that, even if the Recording was protected opinion at the time of its initial publication, UMG's republication of "Not Like Us" in the months following, after it achieved unprecedented levels of commercial success, exposes it to liability. Hr'g Tr. at 37:20-38:17. This argument is logically incoherent. If the Recording was nonactionable opinion at the time it was initially produced, then its republication would not expose UMG to liability. Republication cannot transform Lamar's statement of opinion into UMG's statement of fact.

---

https://www.wsj.com/arts-culture/music/kendrick-lamar-vs-drake-rap-beef-diss-tracks-e346839d?mod=Searchresults&pos=5&page=1 [https://perma.cc/77XG-9EX6].

22

### 3.  Tone and Language

That the Recording can only reasonably be understood as opinion is reinforced by the language employed in the song.  *Steinhilber*, 68 N.Y.2d at 293 (The Court examines the "tone and its apparent purpose.").  "Loose, figurative or hyperbolic statements, even if deprecating the plaintiff," *Brahms v. Carver*, 33 F. Supp. 3d 192, 198 (E.D.N.Y. 2014) (cleaned up), and "imaginative expression," *Levin*, 119 F.3d at 196, cannot constitute actionable defamation.  *See Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 150 (2d Cir. 2000) ("A court may also consider whether the 'general tenor' of the publication negates the impression that challenged statements imply defamatory facts about the plaintiff.").

In *Rapaport*, for example, the court concluded that the "tone and apparent purpose of the diss track," especially considering its use of hyperbolic and vitriolic words and imagery, further "reinforce[d] for the audience that the video is not intended to reflect an accurate factual assessment of Rapaport."  2021 WL 1178240, at *16.  The district court faced "no difficulty concluding that the context of this 'diss track' video reasonably signals to viewers that the challenged statements are the prejudiced, opinionated viewpoints of the Barstool Defendants."  *Id.*  The Second Circuit affirmed the district court's analysis, concluding that "[t]he nature and tone of the surrounding language can function as a strong indicator to the reasonable reader that the statement is not expressing or implying any facts."  2024 WL 88636, at *4.

"Not Like Us" is replete with profanity, trash-talking, threats of violence, and figurative and hyperbolic language, all of which are indicia of opinion. A reasonable listener would not equate a song that contains lyrics such as, "Ain't no law, boy, you ball boy, fetch Gatorade or somethin', since 2009 I had this b**** jumpin'," with accurate factual reporting. Accordingly, the reasonable listener of "Not Like Us" would conclude that Lamar is rapping hyperbolic vituperations.

Plaintiff contends that, in determining if the lyrics in "Not Like Us" express fact or opinion, the Court must consider the subjective views of listeners, "as well as commentators in the rap industry and the press," who understood the Recording, Video and Image as an attempt to "convey a precise factual message (pedophilia) about Drake." Opp'n Br. at 7, 9; *see also* Am. Compl., ¶ 219. The Amended Complaint cites extensively to comments and posts from YouTube and Instagram that expressed the belief that the Recording had exposed the truth and that Drake truly was engaged in "pedophilia and sexual violence against children." Am. Compl., ¶ 219; *see also id.*, ¶¶ 73-76, 78-82, 220.

But "distinguishing between fact and opinion is a question of law for the courts, to be decided based on 'what the average person hearing or reading the communication would take it to mean.'" *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014) (citation omitted). "The dispositive inquiry is whether a reasonable [listener] could have concluded that the statements were conveying facts about the plaintiff." *Id.* at 269-70 (citation omitted). Courts make that determination by looking at the

24

full context and surrounding circumstances of the challenged communication. *Id.* at 270.

The Court holds, based upon a full consideration of the context in which "Not Like Us" was published, that a reasonable listener could not have concluded that "Not Like Us" was conveying objective facts about Drake. The views expressed by users @kaioken8026, @mrright8439, and @ZxZNebula, and the other YouTube and Instagram commentators quoted in the Complaint, Am. Compl., ¶¶ 73-74, do not alter the Court's analysis. In a world in which billions of people are active online, support for almost any proposition, no matter how farfetched, fantastical or unreasonable, can be found with little effort in any number of comment sections, chat rooms, and servers. "[T]hat some readers may infer a defamatory meaning from a statement does not necessarily render the inference reasonable under the circumstances." *Jacobus*, 51 N.Y.S.3d at 336.

The artists' seven-track rap battle was a "war of words" that was the subject of substantial media scrutiny and online discourse. Although the accusation that Plaintiff is a pedophile is certainly a serious one, the broader context of a heated rap battle, with incendiary language and offensive accusations hurled by both participants, would not incline the reasonable listener to believe that "Not Like Us" imparts verifiable facts about Plaintiff.

### 4.   Image and Video

To the extent that Plaintiff alleges that the Image and Video are independently actionable, Am. Compl., ¶¶ 7, 8, 65-66, 105-112, the Court holds that

25

they too constitute opinion.  The Image is the album cover art for "Not Like Us."  It thus shares the same overall context as the Recording itself.  The Image is "designed to reinforce" the message of the Recording.  Am. Compl., ¶ 7.  And as the Court has already found, that message is protected opinion.  Additionally, the Image itself, with its overlay of more than a dozen sex offender markers, is obviously exaggerated and doctored.  No reasonable person would view the Image and believe that in fact law enforcement had designated thirteen residents in Drake's home as sex offenders.

The figurative imagery accompanying the music video also constitutes protected opinion.  Plaintiff alleges, for example, that the "Video depicts a prolonged shot of a live owl in a cage," projecting the message that "Drake belongs behind bars."  Am. Compl. ¶ 110.  An image of a caged owl cannot reasonably be understood to convey a factual message.  Similarly, depicting Kendrick Lamar playing hopscotch while singing the "A-minor" lyric is not suggestive of objective reporting.  *Id.* ¶ 107.

## B. Mixed Opinion

Although pure opinion cannot constitute actionable defamation, "mixed opinion," which is an opinion that "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it," is actionable.  *Steinhilber*, 68 N.Y.2d at 289; *see also Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014).  "Mixed opinion" holds "the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the

26

person about whom he is speaking." *Steinhilber*, 68 NY.2d at 290. Whether statements constitute mixed opinion presents a legal question, "which must be answered by considering, in the context of the entire communication and of the circumstances in which they were spoken or written, whether the average listener would reasonably understand the opinion as implying the assertion of undisclosed facts justifying the opinion." *Cooper v. Templeton*, 629 F. Supp. 3d 223, 235-36 (S.D.N.Y. 2022) (citation omitted).

Just as the overall context of "Not Like Us" forecloses the argument that its lyrics can be read as factual assertions, that same context negates any implication that Lamar's lyrics are based upon undisclosed facts. *See LaNasa v. Stiene*, No. 24-1325, 2025 WL 893456, at *3 (2d Cir. Mar. 24, 2025) (holding that, where statements are made in circumstances "where an audience may anticipate the use of epithets, fiery rhetoric or hyperbole," inference could not reasonably be drawn that assertions were based on undisclosed facts). In the context of this rap diss battle, no reasonable person would listen to "Not Like Us" and assume that Lamar uniquely had access to credible, provable facts that revealed Drake to be a pedophile.

Plaintiff's arguments that the lyrics to "Not Like Us" can be read to suggest Lamar's reliance upon undisclosed facts is unavailing. Plaintiff first posits that the line, "Say Drake, I *hear* you like 'em young," indicates that Lamar had "heard" from outside sources evidence confirming that Drake is a pedophile. Opp'n Br. at 17. As discussed *infra*, however, that ignores that this line is reasonably understood to be

27

a direct response to Drake's challenge to Lamar in "Taylor Made Freestyle" to

"[t]alk about [Drake] likin' young girls/. . . Heard it on the Budden Podcast, it's gotta

be true." Req. J. Not., Ex. I. This lyric clearly prods Lamar to discuss preexisting

rumors about Drake's interest in minors.[5] Lamar's responsive lyrics are thus akin

to the accusation of pedophilia in *Torain* that the Second Circuit concluded

constituted pure opinion. There, the Second Circuit concluded that a reasonable

person would understand based on the context that the defendant disk jockey was

using the term "pedophile" in response to directly pertinent comments made by

plaintiff during their "war of words," and was not relying upon undisclosed facts.

279 F. App'x at 47.

Plaintiff next points to the lyrics, "Rabbit hole is still deep, I can go further, I

promise." Opp'n Br. at 17. Plaintiff argues that a reasonable listener could view

this lyric as suggesting that Lamar has specific evidence to back up his assertions of

pedophilia. *Id.* It is not at all clear that this is a natural reading of this lyric. Even

_____

[5] Plaintiff claims that this interpretation is "disputed" and that the Court would
require "vital witness testimony" in order to properly understand this lyric's
meaning. Opp'n Br. at 18. Yet at oral argument, Plaintiff's counsel could not
provide the Court with any alternative understanding of this lyric. Hr'g Tr. at 34:5-
35:19. Furthermore, in "The Heart Part 6," Drake confirms that he understands
Lamar to be referring to these preexisting rumors when Drake rapped, "Only f***in'
with Whitneys, not Millie Bobby Browns, I'd never look twice at no teenager." Req.
J. Not., Ex. O. To understand the relevant context for these back-and-forths, the
Court takes judicial notice of the fact that Millie Bobby Brown is a well-known
actress, and that she has given interviews stating that she and Drake formed a
friendship when she was 14 years old and he was 32 years old. *See, e.g.*, Lynn
Hirschberg, *Millie Bobby Brown Is Already an Icon For Her Generation*, W
MAGAZINE, accessed at https://www.wmagazine.com/story/millie-bobby-brown-w-
magazine-cover-interview [https://perma.cc/R8GR-CW5S].

if this line was susceptible to such an interpretation standing alone, however, no reasonable listener could understand it in this way given the overall context. Indeed, during this rap battle, Drake and Lamar each used similar hyperbolic threatening language. *See, e.g.*, Req. J. Not., Ex. K ("But don't tell no lie about me and I won't tell truths 'bout you"); Ex. M ("Your darkest secrets are comin' to light"); Ex. N ("I been in this industry twelve years, I'ma tell y'all one lil' secret/It's some weird s*** goin' on and some of these artists be here to police it"); Ex. O ("I got your f***ing lines tapped, I swear that I'm dialed in/ . . . What about the bones we dug up in that excavation?").  This kind of posturing in a rap diss track does not make such lines more likely to be understood by the ordinary listener to be anything but pure opinion.

## II.  Second Degree Harassment

New York does not recognize a civil cause of action for harassment. *Ralin v. City of New York*, 844 N.Y.S.2d 83, 84 (2d Dep't 2007) ("New York does not recognize a cause of action to recover damages for harassment."); *Wells v. Town of Lenox*, 974 N.Y.S.2d 591, 593 (3d Dep't 2013) ("With regard to the alleged harassment, New York does not recognize a common-law cause of action to recover damages for harassment" (cleaned up)).  Notwithstanding this precedent, Plaintiff attempts to bring a claim for harassment under section 240.26(3) of the New York Penal Code.  A person commits harassment in the second degree when they hold the "intent to harass, annoy or alarm another person" and "engage[] in a course of conduct or repeatedly commit[] acts which alarm or seriously annoy such other

29

person and which serve no legitimate purpose." N.Y. Pen. Law § 240.26(3). Plaintiff alleges that the Recording, Video and Image "individually and collectively provide a call to target Drake, including through violence," Am. Compl., ¶ 249, and that Defendant's "course of conduct in publishing specific and unequivocal threats of violence has placed Plaintiff in reasonable fear of physical harm," *id.*, ¶ 250. This state criminal statute does not provide a private right of action, however. Accordingly, Plaintiff fails to state a claim for harassment.

Under New York law, "[w]here a penal statute does not expressly confer a private right of action on individuals pursuing civil relief, recovery under such a statute 'may be had only if a private right of action may fairly be implied.'" *Hammer v. Am. Kennel Club*, 1 N.Y.3d 294, 299 (2003). To determine whether a criminal statute gives rise to a private right of action, courts look at three factors: "(1) plaintiff must be one of the class for whose benefit the statute was enacted; (2) recognition of a private right of action must promote the legislative purpose; and (3) creation of such a right must be consistent with the legislative scheme." *Id.* (cleaned up).

The third factor's bar is high because, "[a]s a general rule, when a statute is contained solely within the Penal Law Section, the [New York] legislature intended it as a police regulation to be enforced only by a court of criminal jurisdiction." *Casey Sys., Inc. v. Firecom, Inc.*, No. 94 CIV. 9327 (KTD), 1995 WL 704964, at *3 (S.D.N.Y. Nov. 29, 1995). Thus, "[r]arely is there a private right of action under a criminal statute." *Senese v. Hindle*, No. 11-CV-0072 (RJD), 2011 WL 4536955, at

*11 (E.D.N.Y. Sept. 9, 2011); *see also Watson v. City of New York,* 92 F.3d 31, 36 (2d Cir. 1996) ("In the absence of any guidance from state courts, federal courts are hesitant to imply private rights of action from state criminal statutes.").

In *Hammer*, the New York Court of Appeals concluded that there was no private right of action under animal protection criminal statutes because "enforcement authority lies with police and societies for the prevention of cruelty to animals and violations [are] handled in criminal proceedings." *Id.* at 300. In light of this "comprehensive statutory enforcement scheme," recognizing a private right of action would be inconsistent with legislative intent. *Id.*; *see also Golden v. Diocese of Buffalo, NY*, 125 N.Y.S.3d 813, 816 (4th Dep't 2020) ("[R]ecognizing a private right of action [for criminal nuisance] would not be consistent with the existing mechanism for enforcing the statute, i.e., criminal prosecution.").

Consistent with this precedent, courts routinely dismiss civil harassment claims as not cognizable under New York law. *See, e.g., Cablevision Sys. Corp. v. Communic'ns Workers of Am. Dist.*, 16 N.Y.S.3d 753, 754 (2d Dep't 2015) (applying *Hammer* to uphold dismissal of harassment claim based on Penal Law); *Broadway Cent. Prop. Inc. v. 682 Tenant Corp.*, 749 N.Y.S.2d 225, 227 (1st Dep't 2002) ("New York does not recognize a civil cause of action for harassment."); *see also Masic v. Town of Franklinville, New York*, No. 1:24-CV-18-GWC, 2025 WL 2480898, at *16 (W.D.N.Y. Aug. 27, 2025) (applying *Hammer* to find there is no implied right of action under section 240.26); *Stathatos v. William Gottlieb Mgmt.*, No. 18-CV-03332 (KAM) (RER), 2020 WL 1694366, at *4 (E.D.N.Y. Apr. 6, 2020) ("[P]laintiff's

31

allegations of perjury, witness intimidation, witness or evidence tampering, and harassment are criminal charges without a private right of action.").

While Plaintiff cites cases in which courts have recognized a private right of action for criminal harassment under New York law, *see* Opp'n Br. at 26 n.15, most of this authority predates *Hammer*.  As for the two cited cases that post-date *Hammer*, *Baiqiao Tang v. Wengui Guo*, No. 17 Civ. 9031 (JFK), 2019 WL 6169940, at *6 (S.D.N.Y. Nov. 20, 2019), and *Blasetti v. Pietropolo*, 213 F. Supp. 2d 425, 428 (S.D.N.Y. 2002), neither of those cases mention *Hammer* or engage in the analysis required by the New York Court of Appeals to imply a private right of action from a provision of the Penal Law.[6]

There is nothing to distinguish criminal harassment from other provisions of the New York criminal code for which there is no implied private right of action. The New York legislature conferred authority to enforce the criminal harassment statute upon local law enforcement.  *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 71 (2013) ("We have therefore declined to recognize a private right of action in instances where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself." (cleaned up)).  There are no indications in the statutory scheme that the legislature intended to confer a civil

---

[6] For example, *Baiqiao Tang*'s discussion of this issue is limited to a single sentence, a quotation from *Blasetti v. Pietropolo*.  *Blasetti*, in turn, simply states that an implied cause of action exists without engaging in further analysis and cites as support for this proposition cases that predate *Hammer*.  Further, an examination of the cases on which *Blasetti* relies likewise finds that none conducted the analysis required under New York law.  The Court does not find these authorities persuasive.

cause of action for violation of section 240.26.  Plaintiff's claim for harassment must therefore be dismissed.

## III.  New York General Business Law Section 349

Plaintiff's final cause of action, brought under section 349 of New York General Business Law ("GBL"), fares no better.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  Plaintiff alleges that, "on information and belief," Defendant "engaged in deceptive acts and practices in the conduct of business, trade, and commerce by covertly financially incentivizing third parties—including music platforms and social media influencers—to play, stream, and promote the Recording."  Am. Compl., ¶ 256; *see also id.,* ¶¶ 13, 148, 152, 182-83.  As one example, Plaintiff alleges that he "understands" that UMG covertly paid a popular NFR Podcast to promote the Recording and publish podcast episodes and other content about the Recording.  *Id.*, ¶ 182.  On information and belief, Plaintiff further claims that UMG used its resources to incentivize third parties to use bots to stream the Recording and subsequently extolled the Recording's streaming numbers on Spotify while knowing that millions of the streams were false and fraudulent.  *Id.*, ¶¶ 227-29, 257.  Lastly, the Amended Complaint alleges that UMG paid at least one radio promoter to engage in pay-for-play arrangements, or "payola," of the Recording on New York radio stations.  *Id.*, ¶¶ 184-85, 258.

To successfully state a claim under section 349, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are

misleading in a material way, and (3) the plaintiff has been injured as a result."
*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quotations and citations omitted). Plaintiff asserts that Defendant's deceptive acts and practices were intended to inflate the public's view of the Recording's popularity and success, which would lead a reasonable consumer of music to be materially misled. Am. Compl., ¶ 259.

Defendant first argues that Plaintiff uses an improper pleading device, as his section 349 allegations all rest upon information and belief and do not go beyond "pure conjecture and speculation." ECF No. 43 at 22-23 (quoting *Boehm v. Sportsmem, LLC*, No. 18-CV-556 (JMF), 2019 WL 3239242, at *2 n.1 (S.D.N.Y. July 18, 2019)). Plaintiff counters that the applicable standard is plausibility under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Opp'n Br. at 23; *see also* Hr'g Tr. 43:15-22.

"*Twombly* does not prevent a plaintiff from pleading facts 'on information and belief' in appropriate circumstances," *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 526 (S.D.N.Y. 2013), but the plaintiff may only do so "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (cleaned up). In that scenario, the allegations "must be accompanied by a statement of the facts upon which the belief is founded." *Pakter*, 931 F. Supp. 2d at 527 (cleaned up).

34

Plaintiff argues that both *Pakter* conditions are satisfied because the Amended Complaint alleges that UMG made indirect payments to a wide array of unknown third parties and also "pleads sufficient 'factual information' concerning UMG's scheme, including examples thereof, contemporary reports, as well as UMG's past practices."  Opp'n Br. at 23.  At oral argument, Plaintiff stressed that "Not Like Us" was the fastest song to reach 300 million streams on Spotify within just thirty-five days, which Plaintiff argues is a sufficient basis for the Court to infer that Defendant implemented a technique to manipulate stream totals, among other "unprecedented tactics," to reach "unprecedented rocketing up the streaming chart."  Hr'g Tr. 43:23-44:18.

The Court disagrees.  To allege that UMG implemented covert practices to manipulate streams of "Not Like Us" and inflate the Recording's perceived popularity, Plaintiff relies on Tweets[7] by individual users and reporting from fans to allege that UMG utilized covert tactics to manipulate streams of "Not Like Us."  Am. Compl., ¶¶ 180-183; *see also* Hr'g Tr. 45:22-46:2.  The Court finds Plaintiff's reliance on online comments and reporting insufficient to meet the plausibility standard.  *See Castenada v. Amazon.com, Inc.*, 679 F. Supp. 3d 739, 750-51 (N.D. Ill. 2023) (finding that "[w]hen it comes to particularity (and plausibility, too), the experience of a no-name person" from a small set of anonymous customer reviews "does not add much heft to the complaint"); *Doe v.*

---

[7] Tweets are now known as Posts on X.  X was formerly known as Twitter, where users could post their writings and media as a "Tweet."

*Kamehameha Sch./Bernice Pauahi Bishop Estate*, Civ. No. 08–00359 JMS–BMK, 2008 WL 5423191, at *3 (D. Haw. Dec. 31, 2008) (finding a lack of probity from anonymous online comments that "invite[] commentators to make outrageous statements under a veil of secrecy").  A small sample of users' possible experience, communicated through Tweets and other anonymized commentary, fails to establish a plausible inference that UMG manipulated listeners into streaming "Not Like Us" instead of Drake's music.

While these covert practices of providing financial incentives to undisclosed third parties and leveraging of business relationships, if they exist, may be facts that are "peculiarly within the possession and control of" UMG, Plaintiff's allegations —based on what boils down to unreliable online commentary —do not form a "sufficient factual basis such that there is a 'reasonable expectation that discovery will reveal evidence of illegality.'"  *Asset Co IM Rest, LLC v. Katzoff*, No. 23 Civ. 9691 (JPC), 2025 WL 919489, at *11 (S.D.N.Y. Mar. 26, 2025) (quoting *Arista Records*, 604 F.3d at 120).  Ultimately, Plaintiff fails to provide any facts or circumstances that would make it "highly plausible" that UMG conducted such covert business tactics.  *Moraes v. White*, 571 F. Supp. 3d 77, 103 (S.D.N.Y. 2021).

Even if the Court accepted Plaintiff's pleadings on information and belief, Plaintiff still has not stated a claim for relief under section 349.  Plaintiff has not sufficiently alleged deceptive practices that are consumer oriented.  "Under New York law, the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for personal,

36

family or household purposes." *McCracken v. Verisma Sys., Inc.*, 131 F. Supp. 3d 38, 46 (W.D.N.Y. 2015) (cleaned up). "A defendant engages in 'consumer-oriented' activity if the company's actions cause any consumer injury or harm to the public interest. *Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 451 (S.D.N.Y. 2022) (cleaned up). While section 349 does not preclude an action brought by one business competitor against another, it is at its core a "consumer protection device." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).

The Amended Complaint does not indicate how any of the deceptive practices allegedly utilized by UMG harmed consumers. For example, the Amended Complaint does not allege that consumers paid more than they otherwise would have for a product, purchased a product that they otherwise would not have because of misrepresentations regarding the product, or otherwise received less in value for any purchases that they did make. *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96, 102 (2d Dep't 2012) (holding that section 349 is limited to deceptive practices that "pertain[] to an issue that may bear on a consumer's decision to participate in a particular transaction" or which "undermine a consumer's ability to evaluate his or her market options and to make a free and intelligent choice"). The Amended Complaint is somewhat vague as to who the class of consumers is and what product, goods, or services they are purchasing. It is not clear how the alleged redirection of Spotify "users who are searching for other unrelated songs and artists" to the Recording would amount to actual harm of consumers or any limitation of their choices. At most, the allegations suggest that

37

UMG engaged in practices to make "Not Like Us" seem more popular than it actually was, without connecting that activity to any consumer harm. Such practices, without more, do not state a claim under section 349 of the GBL.

**CONCLUSION**

Defendant's motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate ECF Nos. 42, 78, and 81, and to close the case.

SO ORDERED.

Dated: October 9, 2025
      New York, New York                    _____
                                              JEANNETTE A. VARGAS
                                              United States District Judge

**ADDENDUM B**

Plaintiff-Appellant Aubrey Drake Graham ("Drake") appeals from the District Court's Opinion and Order entered on October 9, 2025 (ECF No. 96), which granted Defendant-Appellee UMG Recordings, Inc.'s ("UMG") Motion to Dismiss all three claims in Drake's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Drake plans to raise on appeal the correctness of that Order and submits the following list of subsidiary issues to be raised on appeal, all of which are subject to *de novo* review. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016) ("We review a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) de novo, accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor.") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Drake reserves the right to add to, subtract from, or otherwise modify this list in briefing the appeal.

### First Claim: Defamation/Defamation *Per Se*

1. Whether the District Court erred in dismissing Drake's defamation claim at the pleading stage by (1) narrowly and universally deciding disputed questions of fact, that is, the context in which the allegedly defamatory statements were made, without discovery on the issue and irrespective of the numerous, varying contexts of UMG's publications and republications of the defamatory statements, as alleged in the Amended Complaint; (2) drawing inferences against Drake, such as the inference that no reasonable listener could interpret the lyric, "Rabbit hole is still deep, I can go further, I promise" as implying the possession of additional, undisclosed evidence supporting the defamatory statements; and (3) disregarding well-pleaded factual allegations that reasonable listeners did, in fact, believe the defamatory statements were conveying factual information to hold that, as a matter of law, no reasonable listener could have concluded that "Not Like Us" (the "Recording") was conveying facts about Drake.

2.      Whether the District Court erred in deciding, at the pleading stage and as a matter of law, if a reasonable listener would perceive the Recording as conveying fact or opinion.

3.      Whether the District Court erred in holding, at the pleading stage, that the Recording, including its allegations that Drake is a "certified pedophile," constitutes non-actionable opinion because no reasonable listener could interpret the Recording as conveying objective facts about Drake, when the Amended Complaint alleges that reasonable listeners did, in fact, interpret the Recording as conveying factual information about Drake.

4.      Whether the District Court erred in holding, at the pleading stage and without discovery into the question, that the only appropriate context in which to assess the Recording is the "rap battle" between Drake and Kendrick Lamar Duckworth, including the tracks "Push Ups," "Taylor Made Freestyle," "Euphoria," "6:16 in LA," " Family Matters," "Meet the Grahams," "Not Like Us," and "The Heart Part 6," and including Drake's own lyrics directed at Mr. Duckworth in tracks that preceded the Recording but did not achieve the same level of exposure to and attention from the general public who heard the Recording in the months following its publication.

5.      Whether the District Court erred in requiring that all songs included in the rap battle be read together to assess the Recording's singular assertion that Drake is a criminal pedophile, despite the Amended Complaint's well-pleaded facts that the Recording (1) became more famous than the rest of the songs in the rap battle, and (2) was heard by listeners who did not have any familiarity with the rap battle or its context, such as the diverse population watching Mr. Duckworth's performance of the Recording at the Super Bowl LIX halftime show.

6.      Whether the District Court erred in holding that UMG's republication of the Recording in different contexts, including republication months after the Recording achieved

2

commercial success and to entirely new audiences unfamiliar with the rap battle, cannot expose UMG to defamation liability if the Recording constituted nonactionable opinion in the context of its initial publication.

7. Whether the District Court erred in holding that the forum in which the allegedly defamatory statements were made, a "diss track," is akin to online forums such as YouTube or X (formerly Twitter), rather than the product of thoughtful investigation and drafting by a professional musical artist who operates in circles that may provide him with superior and insider knowledge concerning his celebrity peers.

8. Whether the District Court erred in holding that the tone of the Recording, even as reinforced by the Image and Video, would not incline a reasonable listener to believe the Recording imparts verifiable facts that Drake is a criminal pedophile, an allegation of the utmost seriousness, which reasonable listeners did believe, and which would imply that words in a rap song could never underlie a defamation claim.

9. Whether the District Court erred in assessing the Image and Video in the same context as the Recording, rather than in the various contexts in which audiences were alleged to have viewed and interpreted them, including months after the initial publication of the Recording and outside the context of the entire rap battle.

10. Whether the District Court erred in holding that the Recording does not constitute actionable mixed opinion by disregarding the Amended Complaint's well-pleaded allegations that the Recording's lyrics "Say Drake, I hear you like 'em young" and "Rabbit hole is still deep, I can go further, I promise" represent that Mr. Duckworth possesses additional undisclosed information to support his allegations that Drake is a pedophile, and that reasonable listeners interpreted the Recording in these precise terms.

3

11. Whether the District Court erred by drawing inferences against Drake, resolving questions of fact, and choosing not to accept the Amended Complaint's well-pleaded allegations as true, including, *inter alia*, the allegations that (1) reasonable listeners did understand the Recording's assertions that Drake is a pedophile as conveying factual information, (2) reasonable listeners did interpret the Recording's assertion that "Rabbit hole is still deep, I can go further, I promise" as suggesting that the Recording's allegations of pedophilia were based on additional, undisclosed evidence, and (3) the Video's visual of an owl (Drake's self-proclaimed artistic symbol) held in a cage conveys the factual message that Drake should be incarcerated.

12. Whether the District Court erred in taking judicial notice of Exhibits C, H–I, and K–O of UMG's Request for Judicial Notice, *see* ECF No. 44, in addition to other extrinsic evidence, and whether the District Court improperly relied on such evidence for the truth of its contents in assessing the context of the allegedly defamatory statements.

**Second Claim: Second Degree Harassment**

13. Whether the District Court erred in dismissing Drake's second degree harassment claim by holding that New York does not recognize a private right of action for harassment, despite precedent in which other courts, including the U.S. Court of Appeals for the Second Circuit, have recognized a private right of action for harassment under New York law.

14. Whether the District Court erred by not recognizing a private right of action for harassment in N.Y. Penal Law § 240.26(3) where allowing private citizens who suffer harassment to bring civil harassment claims would both promote the legislative purpose and be consistent with the legislative scheme providing for criminal enforcement mechanisms.

4

**Third Claim: New York General Business Law § 349**

15. Whether the District Court erred in holding that the Amended Complaint failed to state a claim under New York Gen. Bus. L. § 349 where the Amended Complaint plausibly alleged that UMG engaged in materially misleading consumer-oriented conduct that harmed Drake.

16. Whether the District Court erred in holding that the Amended Complaint's allegations failed to meet the plausibility standard because they were pleaded on information and belief, despite the fact that relevant information was peculiarly within the possession and control of UMG, and the Amended Complaint more broadly pleaded detailed factual allegations, including online comments and reporting, that make an inference of UMG's culpability plausible.

17. Whether the District Court erred by failing to accept as true the Amended Complaint's well-pleaded allegations that UMG's deceptive business practices were directed at consumers of music and caused harm to consumers of music.