# 25-2758

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

AUBREY DRAKE GRAHAM,

*Plaintiff-Appellant,*

v.

UMG RECORDINGS, INC.,

*Defendant-Appellee.*

On Appeal From the United States District Court
for the Southern District of New York (Vargas, J.)

## DEFENDANT-APPELLEE'S OPPOSITION TO THE MOTION FOR CERTIFICATION

ROLLIN A. RANSOM
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, C.A. 90071
(213) 896-6000

EAMON P. JOYCE
NICHOLAS P. CROWELL
KATELIN EVERSON
JAMES R. HORNER
SIDLEY AUSTIN LLP
787 7th Avenue
New York, N.Y. 10019
(212) 839-5300

*Counsel for Defendant-Appellee UMG Recordings, Inc.*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

UMG Recordings, Inc. is a wholly-owned indirect subsidiary of Universal Music Group, N.V., a Netherlands public limited company. No other publicly-held company owns 10% or more of the stock of UMG Recordings, Inc. Bollere SE is a publicly traded company organized under the laws of France and owns more than 10% of Universal Music Group, N.V.'s stock. No other publicly-held company owns 10% of more of Universal Music Group, N.V.'s stock.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................... 1

BACKGROUND ....................................................................................... 3

ARGUMENT ............................................................................................ 6

I.    Precedent Forecloses An Implied Right of Action Under N.Y. Penal Law § 240.26 ................................................................... 8

    A.    As Dictated by the Governing New York Test, Courts Hold That the Legislature Did Not Include an Implied Right of Action For N.Y. Penal Law § 240.26 ....................................... 8

    B.    Drake's Purported Split of Authority Dodges the Appellate Division Authority and Instead Rests on Cases That Ignore New York's Implied-Right-of-Action Test ............................. 17

II.    The Other Factors Do Not Support Certification .......................... 21

CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.,*
   634 F.3d 112 (2d Cir. 2011) ................................................................ 8

*Alexander v. Sandoval,*
   532 U.S. 275 (2001) .......................................................................... 18

*Bahar v. Sanieoff,*
   2020 NY Slip Op. 33790(U), (Sup. Ct., N.Y. Cnty. Nov. 16,
   2020) ................................................................................................ 17

*Brown v. Greiner,*
   409 F.3d 523 (2d Cir. 2005) .............................................................. 10

*Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1,*
   16 N.Y.S.3d 753 (2d Dep't 2015) ........................................................ 9

*Chanko v. Am. Broad. Cos.,*
   27 N.Y.3d 46 (2016)........................................................................... 16

*Chavez v. Occidental Chem. Corp.,*
   933 F.3d 186 (2d Cir. 2019) ......................................................... 7, 22

*Colavito v. N.Y. Organ Donor Network, Inc.,*
   438 F.3d 214 (2d Cir. 2006) .............................................................. 21

*Cornejo v. Bell,*
   592 F.3d 121 (2d Cir. 2010) ................................................................ 7

*Cort v. Ash,*
   422 U.S. 66 (1975)........................................................................ 18, 19

*Cosby v. Russell,*
   2012 WL 1514836 (N.D.N.Y. Feb. 8, 2012)........................................ 17

*Cruz v. NYCTA,*
   2025 WL 209598 (S.D.N.Y. Jan. 16, 2025)........................................ 17

iii

*Cruz v. TD Bank, N.A.,*
22 N.Y.3d 61 (2013)................................................................5, 13

*Cruz v. TD Bank, N.A.,*
711 F.3d 261 (2d Cir. 2013) .......................................................21

*DiBella v. Hopkins,*
403 F.3d 102 (2d Cir. 2005) ..........................................................6

*Diguglielmo v. Senkowski,*
42 F. App'x 492 (2d Cir. 2002) ...................................................10

*In re E.S.,*
8 N.Y.3d 150 (2007)....................................................................10

*Elias v. Rolling Stone LLC,*
872 F.3d 97 (2d Cir. 2017) ......................................................7, 10

*Galella v. Onassis,*
487 F.2d 986 (2d Cir. 1973) .............................................18, 19, 20

*Giuffre Hyundai, Ltd. v. Hyundai Motor Am.,*
756 F.3d 204 (2d Cir. 2014) ..........................................................7

*Goldstein v. Tabb,*
575 N.Y.S.2d 902 (2d Dep't 1991) ................................................9

*Haar v. Nationwide Mut. Fire Ins. Co.,*
34 N.Y.3d 224 (2019)...................................................................15

*Halio v. Lurie,*
222 N.Y.S.2d 759 (2d Dep't 1961) ..............................................16

*Hammer v. Am. Kennel Club,*
1 N.Y.3d 294 (2003)..........................................................4, 9, 12, 19

*Hartman v. 536/540 E. 5th St. Equities, Inc.,*
797 N.Y.S.2d 73 (1st Dep't 2005) .................................................9

*Israel v. City of Syracuse,*
2021 WL 4777256 (N.D.N.Y. Sept. 16, 2021)..............................17

*Jones v. Cuomo,*
254 F. App'x 6 (2d Cir. 2007) ................................................................ 10

*Konkur v. Utica Acad. of Sci. Charter Sch.,*
38 N.Y.3d 38 (2022) ...................................................................... 12, 21

*Long v. Beneficial Fin. Co.,*
330 N.Y.S.2d 664 (4th Dep't 1972) ...................................................... 19

*Manko v. Volynsky,*
1996 WL 243238 (S.D.N.Y. May 10, 1996) ......................................... 17

*Metz v. State of New York,*
20 N.Y.3d 175 (2012) ...................................................................... 13, 14

*Molinari v. Bloomberg,*
564 F.3d 587 (2d Cir. 2009) .................................................................. 6

*Mountain View Coach Lines, Inc. v. Storms,*
476 N.Y.S.2d 918 (2d Dep't 1984) ...................................................... 10

*Nader v. Gen. Motors Corp.,*
25 N.Y.2d 560 (1970) ......................................................................... 16

*Ortiz v. Ciox Health LLC,*
37 N.Y.3d 353 (2021) ..................................................... 12, 13, 14, 22

*Ortiz v. Ciox Health LLC,*
961 F.3d 155 (2d Cir. 2020) (per curiam) ....................................... 7, 21

*Pahuta v. Massey-Ferguson, Inc.,*
170 F.3d 125 (2d Cir. 1999) ....................................................... 1, 7, 9

*Prac. Ctr. Concord Rusam, Inc. v. Bavrovska,*
2019 NY Slip Op. 34624(U) (Sup. Ct., Westchester Cnty.
Oct. 29, 2019) ................................................................................. 17

*Ralin v. City of New York,*
844 N.Y.S.2d 83 (2d Dep't 2007) .......................................................... 9

*Schlessinger v. Valspar Corp.,*
21 N.Y.3d 166 (2013) ......................................................................... 14

*Stathatos v. William Gottlieb Mgmt.,*
2020 WL 1694366 (E.D.N.Y. Apr. 6, 2020) ........................................ 17

*Sudler v. City of New York,*
689 F.3d 159 (2d Cir. 2012) ........................................................ 22

*Sulehria v. State of New York,*
2012 WL 1288760 (N.D.N.Y. Feb. 8, 2012) ........................................ 17

*Valls v. Allstate Ins. Co.,*
919 F.3d 739 (2d Cir. 2019) (per curiam) .......................................... 6

*Watson v. City of New York,*
92 F.3d 31 (2d Cir. 1996) ................................................. 15, 16, 17

**Statutes**

N.Y. G.B.L. § 395 ...................................................................... 14

N.Y. Navigation Law § 58 ............................................................ 14

N.Y. Navigation Law § 62 ............................................................ 14

N.Y. Penal Law § 10.00 .............................................................. 13

N.Y. Penal Law § 240.25 ............................................................ 19

N.Y. Penal Law § 240.26 ...................................................... *passim*

## PRELIMINARY STATEMENT

Alongside his appellate brief challenging the dismissal of his complaint in full for failure to state a claim, Plaintiff Aubrey Drake Graham ("Drake") has moved to certify to the New York Court of Appeals a question related to the dismissal of the second of his complaint's three claims—whether New York's second-degree harassment statute, *see* N.Y. Penal Law § 240.26, contains an implied private right of action. He seeks the extraordinary relief of certification despite that the Appellate Division of the New York Supreme Court has squarely held that the statute does not, *see*, *e.g.*, *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999) ("We are bound . . . to apply the law as interpreted by New York's intermediate appellate courts . . . unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion."), and that this Court has denied certification of a closely related question.

Drake's motion for certification is a baseless, last-ditch attempt to drag out litigation against UMG Recordings, Inc. ("UMG"). Among other things, the motion barely acknowledges the Appellate Division authority, ignores this Court's prior decision rejecting certification in a similar

context, skirts the New York Court of Appeals' test for implying a private right of action, and instead relies on a smattering of trial court decisions. But those trial court decisions fail to acknowledge the Appellate Division authority or the governing test and instead blindly rely on *dicta*—ambiguous *dicta* at that—in a decision by this Court in 1973, thus predating the governing test by more than a decade.

The controlling case law is clear that the Legislature's inclusion of an enforcement provision in a statute indicates that it intended to foreclose an implied right of action. Since Penal Law § 240.26 obviously contains an enforcement provision, there is clearly no right of action. If this statute contained an implied right of action, then virtually all New York criminal statutes would as well, which is irreconcilable with New York law. Additionally, recognizing a right of action for this statute makes especially little sense because it would obliterate the limits on liability for tort claims like intentional infliction of emotional distress and assault. There is no indication the Legislature intended such a result.

Drake's motion for certification should be denied.

2

## BACKGROUND

As will be discussed further in UMG's merits brief, this case concerns the hit diss track "Not Like Us" by Kendrick Lamar, which provided Lamar with the "metaphorical killing blow" in his highly public rap feud with Drake. SPA1. Afterwards, Drake then misdirected his focus away from Lamar and sued UMG because it published and promoted the song.

The second of Drake's three claims was a supposed implied private right of action premised on violation of New York's second-degree criminal harassment statute, N.Y. Penal Law § 240.26. That statute reads as follows:

> A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person:
>
> 1. He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same; or
>
> 2. He or she follows a person in or about a public place or places; or
>
> 3. He or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

3

Subdivisions two and three of this section shall not apply to activities regulated by the national labor relations act, as amended, the railway labor act, as amended, or the federal employment labor management act, as amended.

Harassment in the second degree is a violation.

N.Y. Penal Law § 240.26.

UMG's motion to dismiss explained that there was no private right of action to enforce this section of the penal code and that the claim failed for other reasons as well.[1] The District Court agreed with UMG on the first point and therefore had no reason to reach the others.

In the face of this criminal statute that contains no express private right of action for civil claimants, the District Court carefully applied New York's three-part test for implied rights of action. The court found that Drake's claim failed on the third prong (without addressing the first two prongs)—whether "creation of such a right" is "consistent with the legislative scheme." SPA30 (quoting *Hammer v. Am. Kennel Club*, 1

---

[1] UMG showed that Drake has failed to allege an intent to harass (rather than intent to profit from the song), a harassing "course of conduct" (which cannot be based on pure speech), or that UMG acted without legitimate purpose (given its financial motives with respect to "Not Like Us"). *See* JA163-64. Additionally, UMG explained that the harassment claim failed to satisfy the constitutional test for incitement. *Id.*

4

N.Y.3d 294, 299 (2003)). Relying on New York Court of Appeals' precedent holding that a right of action is inconsistent with the legislative scheme "'where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself,'" the District Court rejected a private right of action because "[t]he New York legislature conferred authority to enforce the criminal harassment statute upon local law enforcement." SPA32 (quoting *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 71 (2013)). As the Court explained, "[t]here is nothing to distinguish criminal harassment from other provisions of the New York criminal code for which there is no implied private right of action." *Id.* The Court invoked a number of Appellate Division decisions, noting "courts routinely dismiss civil harassment claims as not cognizable under New York law," *id.* at 31, and specifically recognized that the cases that actually applied New York's three-part standard had similarly rejected a harassment right of action, *see* SPA31-32 (citing, *inter alia*, Second and First Department decisions).

Drake now moves to have this Court certify the question of whether N.Y. Penal Law § 240.26 provides a private right of action to the New York Court of Appeals. This Court referred Drake's motion to the merits

panel that will hear his appeal. The panel should deny this motion and affirm the dismissal of the complaint in full.

## ARGUMENT

"[C]ertification is an exceptional procedure." *Molinari v. Bloomberg*, 564 F.3d 587, 614 (2d Cir. 2009). As this Court has explained:

> Issues of state law are not to be routinely certified to the highest court of New York simply because a certification procedure is available. The procedure must not be a device for shifting the burdens of this Court to those whose burdens are at least as great. Because it is our job to predict how the forum state's highest court would decide the issues before us, we will not certify questions of law where sufficient precedents exist for us to make this determination.

*DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005) (cleaned up). Furthermore, certification "increases, at times enormously, the expenses incurred by the parties, as it requires at least two additional rounds of appellate review" and "inevitably delays the resolution of the case, sometimes for well more than a year." *Valls v. Allstate Ins. Co.*, 919 F.3d 739, 742 (2d Cir. 2019) (per curiam).

To evaluate a certification request, this Court asks:

> "(1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to

6

> predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us."

*Chavez v. Occidental Chem. Corp.*, 933 F.3d 186, 195-96 (2d Cir. 2019) (cleaned up); *see also Ortiz v. Ciox Health LLC*, 961 F.3d 155, 159 (2d Cir. 2020) (per curiam) (similar). In practice, the absence of the first factor is often dispositive. As noted, because it is this Court's "job to predict how the forum state's highest court would decide the issues before us" this Court "will not certify questions of law where sufficient precedents exist for us to make this determination." *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014) (citation omitted).

And, as noted in the Preliminary Statement, this Court "is bound" to "apply the law as interpreted by New York's intermediate courts," *e.g.*, *Pahuta*, 170 F.3d at 134; *accord Cornejo v. Bell,* 592 F.3d 121, 130 (2d Cir. 2010), thus making certification particularly improvident where a Department of the Appellate Division has spoken and others have not disagreed. *See Elias v. Rolling Stone LLC*, 872 F.3d 97, 108 n.8 (2d Cir. 2017) (citing *Cornejo* and denying certification where a single Department had addressed the question, explaining: "Whatever the

merits of certification, we must bear in mind that the process is prolonged and costly to impecunious plaintiffs. As such, we should be especially reluctant to burden litigants and courts with the process where, as here, state precedent is adequate to resolve an issue."). *Compare 10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 115 (2d Cir. 2011) (granting certification where "New York's intermediate appellate courts are divided").

Regardless, all three factors weigh against certification.

## I. Precedent Forecloses An Implied Right of Action Under N.Y. Penal Law § 240.26

The New York Court of Appeals' test for implied rights of action and precedents refining that test demonstrate that there is no basis for certification here; rather, the Appellate Division precedents involving civil harassment claims and this Court's own consideration of certification questions demonstrate that Drake's motion should be denied. There is no implied right of action under N.Y. Penal Law § 240.26.

### A. As Dictated by the Governing New York Test, Courts Hold That the Legislature Did Not Include an Implied Right of Action For N.Y. Penal Law § 240.26

As Drake effectively concedes (Mot. 8) and the court below recognized (SPA29, 31), every New York appellate court to consider the

8

question has rejected the harassment right of action. *See, e.g.,* *Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1*, 16 N.Y.S.3d 753, 754 (2d Dep't 2015) (affirming dismissal of civil claims based on Penal Law statutes including § 240.26 because "the subject Penal Law provisions do not create a private right of action")[2]; *Ralin v. City of New York*, 844 N.Y.S.2d 83, 84 (2d Dep't 2007) ("New York does not recognize a cause of action to recover damages for harassment"); *Hartman v. 536/540 E. 5th St. Equities, Inc.*, 797 N.Y.S.2d 73, 74 (1st Dep't 2005) (similar); *Goldstein v. Tabb*, 575 N.Y.S.2d 902 (2d Dep't 1991) (similar), *leave to appeal denied*, 80 N.Y.2d 753 (1992).

Whether or not Drake finds these appellate decisions "persuasive" or believes they contain enough "reasoning," Mot. 8, is not the issue. Under this Court's certification test and under this Court's longstanding *Erie* precedent more generally, these Appellate Division cases provide ample grounds for rejecting Drake's motion out of hand. *See*, *e.g.*, *Pahuta*,

---

[2] Drake claims that *Cablevision* "incorrectly assume[s] that New York penal statutes can never imply a private right of action." Mot. 8. Not so. *Cablevision* cited *Hammer*, which sets forth the relevant standard for implied rights of action, *see infra*, and held only that "the *subject* Penal Law provisions do not create a private right of action." 16 N.Y.S.3d at 754 (emphasis added).

170 F.3d at 134 ("We are bound . . . to apply the law as interpreted by New York's intermediate appellate courts . . . unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion."). This Court has declined certification where "state precedent"—in the form of directly on-point Appellate Division caselaw—"is adequate to resolve an issue." *Elias*, 872 F.3d at 108 n.8.[3]

There is simply no foundation for contending that there is any basis—let alone "persuasive evidence"—that the Court of Appeals would depart from these decisions, especially given its settled test for assessing

---

[3] This Court is well familiar with the fact that decisions of the Appellate Division are ordinarily quite succinct. *See, e.g.*, *Jones v. Cuomo*, 254 F. App'x 6, 7 (2d Cir. 2007) (noting that the Appellate Division's decision was "terse"); *Brown v. Greiner*, 409 F.3d 523, 533 (2d Cir. 2005); *Diguglielmo v. Senkowski*, 42 F. App'x 492, 494 (2d Cir. 2002). That makes them no less binding on New York trial courts statewide, *see, e.g.*, *Mountain View Coach Lines, Inc. v. Storms*, 476 N.Y.S.2d 918, 919-20 (2d Dep't 1984), and even the Court of Appeals itself depending on the posture, *see, e.g.*, *In re E.S.*, 8 N.Y.3d 150, 158 (2007) ("The Appellate Division affirmed the trial court's findings of fact, and we may not revisit them (*see* Karger, Powers of the New York Court of Appeals § 13:10, at 489 [rev. 3d ed.] ["(F)indings of fact made by the nisi prius court which have been expressly affirmed by the Appellate Division and have the requisite evidentiary support are . . . conclusive and binding on the Court"])").

10

the existence of an implied right of action. And there is even less reason to take the extraordinary step of certifying a question not subject to disagreement in the intermediate appellate courts.

The result of these Appellate Division cases, moreover, follows inexorably from the New York Court of Appeals' precedents on implied rights of action. The operative question (as correctly framed by the District Court) is whether the fact that the Penal Law § 240.26 contains an enforcement mechanism means that there is no private right of action under it. The answer is yes because the Court of Appeals has held that the Legislature's provision of public or private enforcement mechanism in a statute forecloses an implied right of action and in fact has so held with respect to standard criminal enforcement provisions that are materially indistinguishable.

The touchstone for determining whether a statute contains an implied right of action in New York is "legislative intent:" in the absence of an express right of action, "plaintiffs can seek civil relief in a plenary action based on a violation of the statute only if a legislative intent to create such a right of action is fairly implied in the statutory provisions

11

and their legislative history." *Konkur v. Utica Acad. of Sci. Charter Sch.*, 38 N.Y.3d 38, 40-41 (2022) (cleaned up).

To determine whether a New York penal statute (or any other statute) indicates such legislative intent, courts must consider: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Hammer v. Am. Kennel Club*, 1 N.Y.3d 294, 299 (2003) (cleaned up). "This test requires that all three factors must be satisfied before an implied private right of action will be recognized." *Konkur*, 38 N.Y.3d at 41 (cleaned up).

Regardless of whether the first two parts of the test are satisfied, the third obviously is not. This factor "is the most important and typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others—a choice that should be respected by the courts." *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (2021); *see also id.* ("[T]he presence of alternative enforcement mechanisms is frequently determinative."). The Court of Appeals has "therefore declined to recognize a private right of action in instances where the Legislature

12

specifically considered and expressly provided for enforcement mechanisms in the statute itself." *Cruz*, 22 N.Y.3d at 71 (cleaned up). That is, "where a statutory scheme contains private *or public enforcement mechanisms*, this demonstrates that the legislature considered and decided what avenues of relief were appropriate." *Ortiz*, 37 N.Y.3d at 362 (emphasis added).

Here, "the Legislature specifically considered and expressly provided for enforcement mechanisms in the [second-degree harassment statute] itself." *Cruz*, 22 N.Y.3d at 71. The statue states: "Harassment in the second degree is a violation," which is a type of offense subject to public enforcement. N.Y. Penal Law § 240.26; *see also* N.Y. Penal Law § 10.00(3) ("'Violation' means an offense, other than a 'traffic infraction,' for which a sentence to a term of imprisonment in excess of fifteen days cannot be imposed."). Thus, an implied right of action is foreclosed.

As even a case cited by Drake recognizes, the Court of Appeals has already held that a "law providing for criminal penalties and fines on vessel owners demonstrated intent not to impose private right of action." *Ortiz*, 37 N.Y.3d at 362 (citing *Metz v. State of New York*, 20 N.Y.3d 175, 181 (2012)). In *Metz*, the Court of Appeals explained that "a private right

13

of action would be incompatible with the legislative design" where the relevant provisions, in standard language, provided that certain statutory violations would constitute "a class E felony" whereas others would constitute "a misdemeanor." 20 N.Y.3d at 181 (citing N.Y. Navigation Law §§ 58, 62). This language is not materially different from Penal Law § 240.26.

Similarly, in *Schlessinger v. Valspar Corp.*, the Court Appeals held that standard language stating that "'violation of the provisions of this section shall be punishable by a civil penalty of not more than three hundred dollars recoverable in an action by the attorney general . . . or by the corporation counsel for any city or by the appropriate attorney of any other political subdivision'" meant that "the legislature chose to assign enforcement exclusively to government officials." 21 N.Y.3d 166, 171 (2013) (quoting N.Y. G.B.L. § 395-a(4)).[4]

---

[4] Drake's merits brief only briefly argues that an implied right of action is consistent with the New York test. He claims that a "'comprehensive' enforcement scheme" is required. But he cites no case law that actually imposes a "comprehensiveness" requirement. Drake Br. 50-51. And in fact there is no requirement. It is now well-established that "where a statutory scheme contains private or public enforcement mechanisms, this demonstrates that the legislature considered and decided what avenues of relief were appropriate." *Ortiz*, 37 N.Y.3d at 362.

14

In sum, the Appellate Division's consistent rejection of an implied right of action for harassment is entirely dictated by Court of Appeals precedent and there is no basis for certification.

Moreover, this Court has explained that certification of an implied-right-action is especially inappropriate where the implied right of action would effectively subsume existing common-law torts. *See Watson v. City of New York*, 92 F.3d 31, 37 (2d Cir. 1996). This principle follows from "the fact that the determination whether to infer a private statutory right of action is made in light of existing common-law remedies, with which legislative familiarity is presumed." *Id.* (cleaned up); *see also Haar v. Nationwide Mut. Fire Ins. Co.*, 34 N.Y.3d 224, 232 (2019) (same).

In *Watson*, this Court declined to certify to the Court of Appeals the question whether a New York criminal statute concerning undue delay in arraignment had an implied right of action. It explained that "the common law tort of false imprisonment includes a right to recover for undue delay in arraignment" so "[a] separate statutory right of action

---

Nor can Drake explain what "comprehensiveness" actually means or how it is not met by Penal Law § 240.26's incorporation of the well-established enforcement mechanism for violations.

15

would serve no purpose beyond broadening liability to cover nonintentional violations." *Watson*, 92 F.3d at 37.

As in *Watson*, the general types of harms Drake complains of are addressed by common law torts such as assault and intentional infliction of emotional distress that were in existence when the Legislature created Penal Law § 240.26. *See, e.g.*, *Nader v. Gen. Motors Corp.*, 25 N.Y.2d 560, 569 (1970) ("[W]here severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation, a remedy is available in the form of an action for the intentional infliction of emotional distress."); *Halio v. Lurie*, 222 N.Y.S.2d 759, 763 (2d Dep't 1961) (reversing motion to dismiss intentional infliction of emotional distress claim).

The Court of Appeals has carefully circumscribed liability under these torts, for example limiting intentional infliction of emotional distress to "extreme and outrageous conduct," which is a "rigorous, and difficult to satisfy" requirement. *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 56-57 (2016). Allowing a private claim for conduct that is merely "seriously annoy[ing]," N.Y. Penal Law § 240.26, rather than that which is "extreme and outrageous," *Chanko*, 27 N.Y.3d at 56, would "serve no

16

purpose beyond broadening liability" and cause an explosion in emotion distress tort claims that the Legislature could not possibly have intended. *Watson*, 92 F.3d at 37.

Thus, under controlling precedent, it is clear that there is no implied right of action for Penal Law § 240.26. Certification is unnecessary and would merely delay the inevitable.

### B. Drake's Purported Split of Authority Dodges the Appellate Division Authority and Instead Rests on Cases That Ignore New York's Implied-Right-of-Action Test

Having largely dodged the cases and principles that actually matter, Drake relies on selected trial court decisions[5]—largely from federal courts and largely predating the appellate cases noted above—to claim there is a division of authority on this issue that makes certification

---

[5] In fact, the great weight of trial court decisions reject an implied right of action. *See, e.g.*, *Cruz v. NYCTA*, 2025 WL 209598, at *5 (S.D.N.Y. Jan. 16, 2025); *Israel v. City of Syracuse*, 2021 WL 4777256, at *7 (N.D.N.Y. Sept. 16, 2021); *Stathatos v. William Gottlieb Mgmt.*, 2020 WL 1694366, at *4 (E.D.N.Y. Apr. 6, 2020); *Cosby v. Russell*, 2012 WL 1514836, at *11 (N.D.N.Y. Feb. 8, 2012); *Sulehria v. State of New York*, 2012 WL 1288760, at *10 (N.D.N.Y. Feb. 8, 2012); *Manko v. Volynsky*, 1996 WL 243238, at *2 (S.D.N.Y. May 10, 1996); *Bahar v. Sanieoff*, 2020 NY Slip Op. 33790(U), at 3 (Sup. Ct., N.Y. Cnty. Nov. 16, 2020); *Prac. Ctr. Concord Rusam, Inc. v. Bavrovska*, 2019 NY Slip Op. 34624(U) (Sup. Ct., Westchester Cnty. Oct. 29, 2019).

17

appropriate. Mot. 6-7. Consistent with Drake's primary cited authority, these cases largely stem from an ambiguous footnote in *Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973), a case from a different era of private right of action jurisprudence in New York and the federal system. *See generally Alexander v. Sandoval*, 532 U.S. 275, 287-88 (2001) (referring to "the *ancien regime*" of implying rights of action prior to *Cort v. Ash*, 422 U.S. 66, 78 (1975)).

In *Galella*, this Court considered the dismissal of claims a photographer brought against Jacqueline Onassis and other defendants, as well as an injunction Ms. Onassis obtained in defending that suit and pursuing counterclaims "charging that [the photographer] had invaded her privacy, assaulted and battered her, intentionally inflicted emotional distress and engaged in a campaign of harassment" against her and her minor children. 487 F.2d at 992; *see id.* at 994 (discussing the trial court's liability findings). On appeal, this Court rejected the photographer's claim that the First Amendment provided an absolute defense to his conduct. *Id.* at 994-95. In the course of repeatedly finding that the photographer could not "successfully challenge the court's finding of *tortious conduct*," *id.* at 994 (emphasis added); *see id.* at 995 (similar), the

court stated in a footnote that an adjacent harassment statute, N.Y. Penal Law § 240.25, makes "[h]arassment . . . a criminal violation." *Id.* at 994 n.11. Although whether Ms. Onassis had a private right of action for harassment was not before the Court, the court went on to comment: "Conduct sufficient to invoke criminal liability for harassment *may* be the basis for private action." *Id.* (emphasis added).

There was no further analysis (nor did there need to be given that the court below found Ms. Onassis had proven "tortious conduct" under multiple well-recognized causes of action). Far from pointing to any case finding a private right of action for harassment existed, the Court only *cf.*-cited an Appellate Division case affirming *dismissal* of a harassment claim without addressing the private-right-of-action issue. *See Long v. Beneficial Fin. Co.*, 330 N.Y.S.2d 664 (4th Dep't 1972).

Needless to say, *Galella* provides no support for the claim that certification is needed. At best, this Court's pre-*Hammer*, pre-*Cort v. Ash* passing comment on harassment law is plainly *dicta*—and inconclusive *dicta* at that. Even on its face, it is unclear if *Galella* used the word "may" in the sense of what is *theoretically possible* as opposed to using it (as Drake would have it) as a synonym for permits. But figuring out which it

19

meant is academic.[6] *Galella* entirely predates the Appellate Division authorities cited above and all the New York Court of Appeals' cases establishing the governing test for implied rights of action, which clearly forecloses a civil cause of action for Penal Law § 240.26.

Once *Galella* is properly understood, the rest of what Drake says falls away. Nearly all of the cases Drake cites are federal cases that trace back to *Galella* without conducting any analysis. *See* Mot. 6-7 (collecting cases). Tellingly, ***not a single case he relies on cites, much less applies, the New York test for implied rights of action.***

In sum, the split in authority that Drake claims to exist is imagined. The Appellate Division cases are uniform, they are supported by how the Court of Appeals' precedent would require applying its implied-right-of-action test to Penal Law § 240.26, and even the outlier trial court cases Drake identifies skip past the relevant authorities and tests.

---

[6] Drake's claim that "there is no indication that [subsequent New York Court of Appeals decision] overruled *Galella*," Mot. 7, is utterly fantastic. There was no holding to overrule, let alone one reached under the test that clearly controls. There is no reason why the Court of Appeals would reach out to disapprove of a footnote containing ambiguous *dicta* from a superseded era of private right of action jurisprudence.

## II.    The Other Factors Do Not Support Certification

The remaining certification factors, though less critical to the analysis, also weigh against certification.

Deciding whether Penal Law § 240.26 includes a private right of action does not "require[] value judgments and important public policy choices that the New York Court of Appeals is better situated . . . to make." *Ortiz*, 961 F.3d at 159 (cleaned up). As explained, the implied-right-of-action analysis is about "legislative intent." *Konkur*, 38 N.Y.3d at 41. So the legislature, not the court makes the policy judgment. And, moreover, under the New York Court of Appeals' many precedents, this case is now a straightforward one, as the Appellate Division authority recognizes.

Drake points out that this Court has certified implied-private-right-of-action questions in the past. Mot. 3 (citing *Ortiz*, 961 F.3d at 156-57; *Cruz v. TD Bank, N.A.*, 711 F.3d 261, 268 (2d Cir. 2013); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 230 (2d Cir. 2006)). But in large part thanks to those certifications (each of which resulted in the Court of Appeals rejecting a right of action), this area of law is now crystal-clear that "where a statutory scheme contains private or public enforcement

21

mechanisms, this demonstrates that the legislature considered and decided what avenues of relief were appropriate." *Ortiz*, 37 N.Y.3d at 362. This case law leaves no room for policy judgment.

Indeed, what Drake actually seeks to do is substitute *his* policy judgment for the Legislature's. For example, Drake says that "[h]arassment is a serious social ill." Mot. 11. But he should plead that case to the Legislature, which made Penal Law § 240.26 a "violation," which is less serious than a misdemeanor.

Finally, Drake is wrong that recognizing a private right of action would be "determinative of [the] claim." *Chavez*, 933 F.3d at 195-96. Drake claims that if he prevails on the implied-right-of-action issue "then the District Court's judgment could not stand," but that is not true. Mot. 13. As it did before the District Court, UMG will advance other arguments as to why this claim fails in its merits brief. And this Court of course, "may affirm on any ground supported by the record." *Sudler v. City of New York*, 689 F.3d 159, 168 (2d Cir. 2012).

## CONCLUSION

For the foregoing reasons, the merits panel should deny Drake's motion for certification to the Court of Appeals at the same time that it affirms the judgment on appeal.

February 2, 2026          Respectfully submitted,

/s/ *Eamon P. Joyce*

Rollin A. Ransom          Eamon P. Joyce
SIDLEY AUSTIN LLP          Nicholas P. Crowell
350 South Grand Avenue          Katelin Everson
Los Angeles, C.A. 90071          James R. Horner
(213) 896-6000          SIDLEY AUSTIN LLP
         787 7th Avenue
         New York, N.Y. 10019
         (212) 839-5300

*Counsel for Defendant-Appellee UMG Recordings, Inc.*

23

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,738 words, excluding the items exempted by Federal Rule of Appellate Procedure Rule 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated:  New York, New York
February 2, 2026

Respectfully submitted,
*/s/ Eamon P. Joyce*
Eamon P. Joyce
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
ejoyce@sidley.com

24

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2026, I caused the foregoing brief to be served on all registered counsel through the Court's CM/ECF system.

Dated: New York, New York
February 2, 2026

Respectfully submitted,
*/s/ Eamon P. Joyce*
Eamon P. Joyce
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
ejoyce@sidley.com