# 25-2758-cv

# In the United States Court of Appeals
## for the Second Circuit

AUBREY DRAKE GRAHAM,

*Plaintiff-Appellant,*

v.

UMG RECORDINGS, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF MOTION
## FOR CERTIFICATION

MICHAEL J. GOTTLIEB
WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST
LOS ANGELES, CA 90067
(310) 855-3111

ERICA L. ROSS
ANNA M. GOTFRYD
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, D.C. 20006

BRADY M. SULLIVAN
WILLKIE FARR & GALLAGHER LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019

*Counsel for Appellant*
*Aubrey Drake Graham*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................1

ARGUMENT ..............................................................................1

    I.     An Entrenched Split of Authority Supports Certification.....................3

    II.    This Court Should Give Appropriate Weight to Galella......................6

    III.   New York Law Does Not Foreclose Implied Rights of Action in Criminal Statutes. ....................................................................7

    IV.   No Other Basis Exists For Denying Certification.............................10

CONCLUSION ...........................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

*10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*,
634 F.3d 112 (2d Cir. 2011) .................................................................5

*Adar Bays, LLC v. GeneSYS, ID, Inc.*,
962 F.3d 86 (2d Cir. 2020) ...............................................................5, 6

*Beauty Beauty USA, Inc. v. Chin Hong Luo*,
2011 WL 4952658 (S.D.N.Y. Oct. 13, 2011)........................................7

*Blasetti v. Pietropolo*,
213 F. Supp. 2d 425 (S.D.N.Y. 2002) ..............................................4, 7

*Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1*,
16 N.Y.S.3d 753 (N.Y. App. Div. 2015) ...........................................3, 4

*City of N.Y. v. Smokes-Spirits.Com, Inc.*,
911 N.E.2d 834 (N.Y. 2009).................................................................9

*Colavito v. N.Y. Organ Donor Network*,
438 F.3d 214 (2d Cir. 2006) ................................................................6

*Cruz v. TD Bank, N.A.*,
2 N.E.3d 221 (N.Y. 2013)......................................................................9

*E. Fork Funding LLC v. U.S. Bank, Nat'l Ass'n*,
118 F.4th 488 (2d Cir. 2024) ............................................................2, 5

*Earsing v. Nelson*,
629 N.Y.S.2d 563 (N.Y. App. Div. 1995)..............................................7

*Galella v. Onassis*,
487 F.2d 986 (2d Cir. 1973) ..............................................................4, 6

*Goldstein v. Tabb*,
575 N.Y.S.2d 902 (N.Y. App. Div. 1991)..............................................3

*Hammer v. Am. Kennel Club*,
803 N.E.2d 766 (N.Y. 2003).............................................................8, 9

*Hartmann v. 536/540 E. 4th St. Equities, Inc.*,
  797 N.Y.S.2d 73 (N.Y. App. Div. 2005) ................................................. 3

*Konkur v. Utica Acad. of Sci. Charter Sch.*,
  185 N.E.3d 483 (N.Y. 2022) ................................................................. 9

*Liriano v. Hobart Corp.*,
  132 F.3d 124 (2d Cir. 1998) ................................................................. 5

*Long v. Beneficial Finance Co. of N.Y., Inc.*,
  330 N.Y.S.2d 664 (N.Y. App. Div. 1972) .............................................. 4

*Mark G. v. Sabol*,
  717 N.E.2d 1067 (N.Y. 1999) .......................................................... 9, 10

*Metz v. State*,
  982 N.E.2d 76 (N.Y. 2012) ................................................................. 8

*Niagara Mohawk Power Corp. v. Freed*,
  696 N.Y.S.2d 600 (N.Y. App. Div. 1999) .............................................. 7

*Oja v. Grand Chapter of Theta Chi Fraternity*,
  684 N.Y.S.2d 344 (N.Y. App. Div. 1999) .............................................. 7

*Ortiz v. Ciox Health*,
  179 N.E.3d 635 (N.Y. 2021) ............................................................. 8, 9

*Pachter v. Bernard Hodes Grp.*,
  505 F.3d 129 (2d Cir. 2007) ................................................................. 6

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010) ................................................................... 6

*Poulos v. City of N.Y.*,
  2016 WL 224135 (S.D.N.Y. Jan. 19, 2016) ........................................ 4, 7

*Printers II Inc. v. Profs. Publ'g, Inc.*,
  784 F.2d 141 (2d Cir. 1986) ................................................................. 7

*Ralin v. City of New York*,
  844 N.Y.S.2d 83 (N.Y. App. Div. 2007) ................................................ 3

*Schlessinger v. Valspar Corp.*,
   991 N.E.2d 190 (N.Y. 2013)..................................................................9

*Schonfeld v. Hilliard*,
   218 F.3d 164 (2d Cir. 2000) ...............................................................2

*Spock v. United States*,
   464 F. Supp. 510 (S.D.N.Y. 1978) ......................................................4

*Tapia v. Blch 3rd Ave. LLC*,
   906 F.3d 58 (2d Cir. 2018) .................................................................1

*Watson v. City of New York*,
   92 F.3d 31 (2d Cir. 1996) ...........................................................10, 11

**Statutes**

New York Penal Law § 240.26.........................................................*passim*

**Other Authorities**

Hon. Richard C. Wesley, *New York Law in Federal Court: A Brief
   Word on Certification*, N.Y. State Bar J. (May 8, 2020)......................2

**INTRODUCTION**

This is a textbook case for certification. Aubrey Drake Graham ("Drake") and Universal Music Group, Inc. ("UMG") have cited 26 cases discussing whether New York's harassment statutes imply a private right of action. Twelve decisions say yes; 14 say no.[1] When the District Court concluded that New York Penal Law § 240.26 did not imply a private right of action, it picked one side of this entrenched split.[2] UMG seeks to obfuscate this reality by inaccurately portraying the legal landscape, omitting contrary caselaw, overselling the volume of authority supporting it, and oversimplifying the private-right-of-action test. This Court should not be misled, and it should certify the question of whether Section 240.26 implies a private right of action.

**ARGUMENT**

UMG's opposition distorts the law. At the onset, certification is far from the exceedingly rare and disfavored approach that UMG's rhetoric suggests. *See* Dkt. No. 38 at 1-2, 6. "While [the Second Circuit] still occasionally refer[s] to certification as an 'exceptional procedure,' it has in fact become quite a normal practice." *Tapia v. Blch 3rd Ave. LLC*, 906 F.3d 58, 64 (2d Cir. 2018) (Calabresi,

---

[1] This excludes cases that do not mention the harassment statutes.

[2] The District Court picked the *wrong* side of the divide. *See* Dkt. No. 35 at 47-51. This certification motion is presented in the alternative.

1

J., concurring).  Indeed, the Second Circuit "certifies more questions to state high courts than any other Circuit."  Hon. Richard C. Wesley, *New York Law in Federal Court: A Brief Word on Certification*, 20(4) N.Y. State Bar J., at 20 (May 8, 2020).  And the certification procedure has substantial benefits that UMG fails to acknowledge: it "may save time, energy, and resources, and help build a cooperative judicial federalism."  *E. Fork Funding LLC v. U.S. Bank, Nat'l Ass'n*, 118 F.4th 488, 497 (2d Cir. 2024).

All of the circumstances warranting certification are present here.  The New York Court of Appeals has not addressed the question whether the harassment statute implies a private right of action; that frequently recurring question of state law has divided the courts and entails policy concerns best weighed by the State's highest court; and the answer would be determinative of the appeal with respect to Drake's harassment claim.[3]  *See* Dkt. No. 36 at 4-13.  UMG's contrary arguments lack merit.

---

[3] UMG suggests that resolving the private-right-of-action issue will not be determinative of this claim because, in its merits brief, "UMG will advance other arguments" the District Court did not reach.  Dkt. No. 38 at 22.  But UMG provides no reason to think this Court will address those arguments, much less that they will prevail.  "Although [this Court is] empowered to affirm a district court's decision on a theory not considered below, it is [this Court's] distinctly preferred practice to remand such issues for consideration by the district court in the first instance."  *Schonfeld v. Hilliard*, 218 F.3d 164, 184 (2d Cir. 2000).

## I.    An Entrenched Split of Authority Supports Certification.

In a serious mischaracterization of the law, UMG boldly asserts that "every New York appellate court to consider the question has rejected the harassment right of action," and that it is "not subject to disagreement in the intermediate appellate courts."  Dkt. No. 38 at 15-16, 18.  In support of this purported uniformity, UMG relies on four Appellate Division cases.  Three of them—*Ralin v. City of New York*, 844 N.Y.S.2d 83, 84 (N.Y. App. Div. 2007); *Hartmann v. 536/540 E. 4th St. Equities, Inc.*, 797 N.Y.S.2d 73, 74 (N.Y. App. Div. 2005); and *Goldstein v. Tabb*, 575 N.Y.S.2d 902, 904 (N.Y. App. Div. 1991)—say nothing of Section 240.26, nor do they attempt to undertake a private-right-of-action analysis.[4]  They stand only for the noncontroversial proposition that there is no independent common-law or statutory tort for harassment.  No one disputes that; if New York law provided a harassment tort *outside* of the relevant harassment statutes, there would be no need to delve into the private-right-of-action question.

With its irrelevant authority excised, UMG is left with only **one** Appellate Division case.  *See Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1*, 16 N.Y.S.3d 753, 754 (N.Y. App. Div. 2015).  *Cablevision* mentions the private-right-

---

[4] This is ironic, given UMG's refrain that "not a single case [Drake] relies on cites, much less applies, the New York test for implied rights of action."  Dkt. No. 38 at 27.

of-action issue in a single sentence devoid of any analysis. *See id.* This lone, unreasoned decision is far from the robust consensus that UMG claims.

UMG then effectively ignores Appellate Division authority cutting against it and in favor of recognizing an implied right of action under Section 240.26. *See Long v. Beneficial Finance Co. of N.Y., Inc.*, 330 N.Y.S.2d 664, 666 (N.Y. App. Div. 1972); Dkt. 38 at 19 (mentioning *Long* only in passing). In *Long*, the Appellate Division addressed a civil claim based on an alleged violation of a harassment statute materially similar to Section 240.26. *See id.* The court dismissed the claim because it did "not find the acts alleged to have been committed by defendant to be a violation of that section." *See id.* If the court had any doubt as to the cognizability of a civil cause of action based on a violation of the harassment statute, it would have said so; it would have had no reason or basis to decide whether the defendant's conduct violated the statute. Perhaps for that reason, subsequent courts—including this one—have read *Long* to recognize a civil action based on a violation of New York's harassment statutes. *See, e.g.*, *Galella v. Onassis*, 487 F.2d 986, 994 n.11 (2d Cir. 1973); *Poulos v. City of N.Y.*, 2016 WL 224135, at *3 (S.D.N.Y. Jan. 19, 2016); *Blasetti v. Pietropolo*, 213 F. Supp. 2d 425, 428 n.6 (S.D.N.Y. 2002); *Spock v. United States*, 464 F. Supp. 510, 516 (S.D.N.Y. 1978).

At bottom, then, the ***two*** relevant Appellate Division cases cut in both directions and do not provide this Court with clear guidance. That is reason enough

for this Court to certify. *See 10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 126 (2d Cir. 2011); *see also Liriano v. Hobart Corp.*, 132 F.3d 124, 132 (2d Cir. 1998).

Moreover, even if UMG were correct about the state of Appellate Division authority, certification would still be warranted. Contrary to UMG's assertion, *see* Dkt. No. 38 at 7, this Court is "not strictly bound by state intermediate appellate courts." *E. Fork Funding*, 118 F.4th at 497. Rather, it may certify a question to the New York Court of Appeals where there is reason to think that Court would decide a question differently than the Appellate Division. *See id.* That reason may include a division of lower-court authority. For example, in *East Fork Funding*, this Court certified a state-law question regarding the retroactive scope of legislation where (1) the Appellate Division failed to "mention[] the issue of 'retroactivity' or 'conduct[] the analysis" required and (2) trial courts had repeatedly disagreed with the Appellate Division. *See id.* at 497-98.

As discussed in Drake's Motion for Certification (in addition to *Long* and *Galella*), ample authority from state and federal trial courts indicates that a private right of action exists under New York's criminal harassment statutes. *See* Dkt. No. 36 at 6-7. UMG would have this Court disregard those cases, but this Court has repeatedly recognized that decisions of trial courts on questions of state law matter to the certification analysis. *See, e.g.*, *E. Fork Funding*, 118 F.4th at 497-98; *Adar*

*Bays, LLC v. GeneSYS, ID, Inc.*, 962 F.3d 86, 91-92 (2d Cir. 2020); *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 42 (2d Cir. 2010). Certification is made for cases like this, where there is no appellate or trial court consensus. *See, e.g.*, *Penguin*, 609 F.3d at 42; *Adar Bays, LLC*, 962 F.3d at 91-92; *Pachter v. Bernard Hodes Grp.*, 505 F.3d 129, 132-33 (2d Cir. 2007).

## II.     This Court Should Give Appropriate Weight to *Galella.*

UMG's arguments in favor of jettisoning *Galella* likewise fail. First, UMG contends that *Galella* is insignificant because it is "a case from a different era of private right of action jurisprudence in New York and the federal system." Dkt. No. 38 at 18. That turns federalism on its head. Although the *federal* standard for implying a right of action has become far stricter since the days of *Galella*, New York still applies a "more lenient test for implying private rights of action." *Colavito v. N.Y. Organ Donor Network*, 438 F.3d 214, 231 (2d Cir. 2006). *Galella* is consistent with this lenient approach, and it cannot be discarded as a relic of a bygone age.

Second, UMG's claim that *Galella*'s statement regarding a private cause of action is "inconclusive dicta" attempts to create ambiguity where none exists. Dkt. No. 38 at 19. The language in *Galella* is straightforward and plain: "[c]onduct sufficient to invoke criminal liability for harassment may be the basis for private action." 487 F.2d at 994 n.11. And once again, that is precisely how subsequent

6

courts have understood *Galella*. *See Printers II Inc. v. Profs. Publ'g, Inc.*, 784 F.2d 141, 148 (2d Cir. 1986) (citing *Gallela* and stating "we have held that New York would recognize an implied cause of action for violation of its criminal harassment statute"); *Beauty Beauty USA, Inc. v. Chin Hong Luo*, 2011 WL 4952658, at *1 (S.D.N.Y. Oct. 13, 2011); *see also Poulos*, 2016 WL 224135, at *3; *Blasetti*, 213 F. Supp. 2d at 428 n.6.

## III. New York Law Does Not Foreclose Implied Rights of Action in Criminal Statutes.

UMG next contends that because Section 240.26 defines harassment as an offense subject to "standard criminal enforcement," Dkt. No. 38 at 11, "an implied right of action is foreclosed," *id.* at 13. But the law is rarely so simplistic; a *per se* rule that statutes authorizing criminal penalties cannot imply a private right of action is untenable.

New York courts applying the *Sheehy/Hammer* test have repeatedly recognized private rights of action from statutes that, like Section 240.26, carry criminal penalties and are enforced by local law enforcement. *See, e.g.*, *Oja v. Grand Chapter of Theta Chi Fraternity*, 684 N.Y.S.2d 344, 346 (N.Y. App. Div. 1999) (misdemeanor hazing statute); *Earsing v. Nelson*, 629 N.Y.S.2d 563, 565 (N.Y. App. Div. 1995) (misdemeanor air-gun sales statute); *see also Niagara Mohawk Power Corp. v. Freed*, 696 N.Y.S.2d 600, 602 (N.Y. App. Div. 1999) (felony commercial-bribery statute). These decisions—which UMG simply

7

ignores—and legions more would be wrongly decided under UMG's approach. Moreover, UMG's proposed rule would nullify the *Sheehy/Hammer* test, which expressly applies to "penal statute[s]." *Hammer v. Am. Kennel Club*, 803 N.E.2d 766, 768 (N.Y. 2003).

UMG's cited authorities do not support its blanket rule. Rather, each of those decisions relies on indicia of legislative intent to foreclose a cause of action that are lacking here.

*Metz v. State* concerned whether the State could be held liable for the capsizing of a vessel that state inspectors had allegedly negligently inspected. 982 N.E.2d 76, 77 (N.Y. 2012). The court held that it could not, because the claimants could not establish that the State owed them a special duty. *Id.* In reaching that conclusion, the court noted that the statute imposed criminal penalties and fines upon vessel operators and owners. *Id.* at 80. *Metz* thus offers no instruction on the question here: whether a criminal statute implies a private right of action against the entity that committed the offense. *See id.* If it bears on the issue at all, *Metz* involved a key indicia of lack of legislative intent for a private right of action: the legislature amended the statute in response to the tragedy but did not add a private right of action. *See id.* Section 240.26 has had no such illuminating amendments.

Next, the Public Health Law at issue in *Ortiz v. Ciox Health* provided for many alternative civil remedies, displacing the need for a private right of action. *See* 179

N.E.3d 635, 641 (N.Y. 2021). Specifically, government officials could levy fines or seek injunctive relief, patients had recourse through an "article 78 proceeding," and there were express rights of action for "other related provisions." *Id.* Finally, *Schlessinger v. Valspar Corp.* likewise involved a statute providing different mechanisms for civil enforcement. *See* 991 N.E.2d 190, 192 (N.Y. 2013). Further, *Schlessinger* relied on a comparison of closely related statutes, some of which contained the precise enforcement mechanism that the plaintiff sought to imply from the statute at issue. *See id.* Again, that is not present here.

If anything, cases like *Ortiz* and *Schlessinger* demonstrate that—as Drake has explained, *See* Dkt. No. 36 at 5, and contrary to UMG's argument, Dkt. No. 38 at 14-15 n.4—the New York Court of Appeals has repeatedly relied on the existence of "comprehensive statutory enforcement scheme[s]" in determining whether an implied right of action exists. *Hammer*, 803 N.E.2d at 769; *see Konkur v. Utica Acad. of Sci. Charter Sch.*, 185 N.E.3d 483, 487 (N.Y. 2022) ("declin[ing] to find another enforcement mechanism beyond the statute's already comprehensive scheme'" (citation modified)); *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 229 (N.Y. 2013) ("Nor would recognition of such a right be compatible with the comprehensive enforcement mechanisms. . . ."); *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 843 (N.Y. 2009) ("When considering similarly comprehensive enforcement schemes, we have declined to imply a private right of action."); *Mark*

9

*G. v. Sabol*, 717 N.E.2d 1067, 1071 (N.Y. 1999) ("[I]t would be inappropriate for us to find another enforcement mechanism beyond the state's already 'comprehensive' scheme."). The mere existence of a criminal penalty does not suffice.

## IV. No Other Basis Exists For Denying Certification.

Perhaps predictably by this point, UMG next misconstrues *Watson v. City of New York*, 92 F.3d 31, 36-37 (2d Cir. 1996). UMG asserts that, in *Watson*, this Court "explained that certification of an implied-right-of-action is especially inappropriate where the implied right of action would effectively subsume existing common-law torts." Dkt. No. 38 at 15. But *Watson* did not create a *per se* rule. *Watson* involved the question whether a criminal statute governing post-arrest *procedures* implied a private right of action for delay in arraignment. *See* 92 F.3d at 36-37. The court declined certification because "there [wa]s no split of authority," "the issue [was] not unduly complex," and the statutory interpretation question was "not sufficiently difficult." *Id.* at 36. In contrast, this case involves a substantive, not procedural, statute; there *is* a split of authority; and the issue is complex—as that division confirms.

UMG next asserts that, like in *Watson*, implying a private right of action from the harassment statute would "subsume existing common-law torts"—here, the torts of intentional infliction of emotional distress ("IIED") and assault. Dkt. No. 38 at 16. But *Watson* shows exactly why that is *not* the case. There, this Court declined

10

to find a private right of action for delay of arraignment because an existing remedy, "the common law tort of false imprisonment[,] include[d] a right to recover for undue delay in arraignment." 92 F.3d at 37. In that context, "[a] separate statutory right of action would serve no purpose beyond broadening liability to cover nonintentional violations." *Id.* Once again, this case is different: a private cause of action for harassment is not designed to reduce the mental state required for existing torts, which cover different conduct in any event. Nor would it ban nonintentional violations. Proving harassment would still require an "intent to harass, annoy, or alarm another person." N.Y. Penal Law § 240.26.

## <u>CONCLUSION</u>

This Court should grant Drake's Motion for Certification.


Dated: February 9, 2026

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP


*/s/ Michael J. Gottlieb*
Michael J. Gottlieb
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
mgottlieb@willkie.com
(310) 855-3111

Erica L. Ross
Anna M. Gotfryd

11

1875 K Street NW
Washington, D.C. 20006
eross@willkie.com
agotfryd@willkie.com

Brady M. Sullivan
787 Seventh Avenue
New York, New York 10019
bsullivan@willkie.com

*Counsel for Appellant Aubrey Drake Graham*

12

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I certify the following:

1.      This document complies with the type-volume limitation of Rule 27(d)(2)(C) of the Federal Rules of Appellate Procedure because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,599 words.

2.      As required by Rule 27(d)(1)(E) of the Federal Rules of Appellate Procedure, this document complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this document has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated: February 9, 2026


                                        */s/ Michael J. Gottlieb*
                                        Michael J. Gottlieb
                                        Willkie Farr & Gallagher LLP
                                        2029 Century Park East
                                        Los Angeles, CA 90067

                                        *Counsel for Appellant Aubrey Drake Graham*